UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated, and derivatively on behalf of Wells Real Estate Investment Trust, Inc., | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 1:07-CV-862-CAP |
| WELLS REAL ESTATE INVESTMENT TRUST, INC., et al., | |
| Defendants. | |

**O R D E R**

This matter is before the court on the defendants' motion to dismiss the amended complaint [Doc. No. 106] and the plaintiff's motion for oral argument [Doc. No. 113]. As an initial matter, the court has reviewed the briefs filed by the parties and finds that a hearing is not necessary. Therefore, the motion for oral argument [Doc. No. 113] is DENIED.

**BACKGROUND**

This action was filed in the District Court of Maryland on March 12, 2007 [Doc. No. 1], as a purported class action and derivative complaint against the Wells Real Estate Investment Trust, Inc. ("Wells REIT" or "Company"), certain Wells REIT directors and officers, and the Company's advisor ("Advisor"). The lead plaintiff is Washtenaw County Employees' Retirement System, an

entity that held 1,274,794 shares of Wells REIT stock on February 28, 2007, and continues to hold shares of Wells REIT stock.

Wells REIT is a Maryland corporation with its principal executive offices located in Norcross, Georgia. Wells REIT is primarily engaged in the acquisition and ownership of commercial real estate properties. It is a public unlisted REIT, which means that (1) it is public because it is registered with the Securities and Exchange Commission ("SEC"), can sell to the investing public rather than only to "qualified investors," and is required to file reports with the SEC; and (2) it is unlisted because its securities are not listed on a national stock exchange. Because of this business model, Wells REIT has a fixed life. According to the Articles of Incorporation, if its stock is not listed on a national securities exchange by January 30, 2008, Wells REIT must sell its assets and distribute the proceeds.[1]

The Advisor is made up of third parties who contracted with Wells REIT to provide real estate management, advisory services, and administrative functions. Specifically, the following entities comprised the Advisor: (1) Wells Capital, Inc.; (2) Wells Management Company, Inc.; (3) Wells Real Estate Funds, Inc.; (4) Wells Real Estate Advisory Services, Inc.; (5) Wells Advisory

[1] This liquidation deadline has been extended through an amendment to the Company's Articles of Incorporation.

Services I, LLC; and (6) Wells Government Services, Inc. All of the officers and some of the directors of the Advisor were Wells REIT's officers and directors. The Advisor's authority to conduct the day-to-day operations of Wells REIT was delegated through the Wells REIT's Articles of Incorporation and a series of Advisory Agreements.

The Individual Defendants are comprised of eleven individuals who fall into three categories. The first category of Individual Defendants is the Management Director Defendants and consists of: (1) Leo F. Wells, III; (2) Douglas P. Williams; (3) Randall D. Fretz; and (4) Donald A. Miller. The second category of Individual Defendants is the Non-Management Director Defendants and consists of: (1) Bud Carter; (2) Donald S. Moss; and (3) Neil H. Strickland. The third category of Individual Defendants is the Non-Management Director Defendants & Members of the Special Committee[2] and consists of: (1) Michael R. Buchanan; (2) Richard W. Carpenter; (3) William H. Keogler, Jr.; and (4) W. Wayne Woody.

Finally, the plaintiff has named as a party defendant Robert E. Bowers. Bowers has served as the CFO of Wells REIT since April 16, 2007.

---

[2] The Special Committee was appointed by the Wells REIT Board in December 2004 to evaluate strategic alternatives available to the company, including internalization of the Advisor.

On February 5, 2007, Wells REIT announced that it had entered into an agreement with the Advisor to internalize the Advisor ("Internalization"). The proposed consideration for the acquisition was to be the issuance of Wells REIT stock representing just over 4% of the outstanding shares of Wells REIT, which amounted to approximately $175 million ("Internalization Consideration"). This proposed transaction was to be submitted to a vote by the Wells REIT stockholders on April 11, 2007. In advance of the vote, Wells REIT filed the definitive proxy ("Proxy") and a supplement ("Supplemental Proxy") with the SEC regarding the proposed Internalization.

The plaintiff's original complaint asserted two claims: (1) the Proxy was misleading by omission in violation of Section 14(a) of the Exchange Act; and (2) the defendants breached their fiduciary duties by pursuing Internalization [Doc. No. 1]. On March 30, 2007, the plaintiff filed a motion for temporary restraining order ("TRO") and for expedited discovery [Doc. No. 16]. In this motion, the plaintiff sought to enjoin the scheduled vote and to obtain expedited discovery to support its motion for injunctive relief.

On April 9, 2007, the Maryland District Court held a hearing on the plaintiff's motions for TRO and for expedited discovery. The motions were denied [Doc. No. 49], and the scheduled

stockholders' meeting was allowed to proceed. At the stockholders' meeting on April 16, 2007, the proposed Internalization was approved. On April 17, 2007, the lawsuit was transferred to this court [Doc. No. 51].

On June 27, 2007, the plaintiff filed its amended class action complaint [Doc. No. 103]. The amended complaint contains seven counts: (1) a class action claim against the Advisor and the Individual Defendants asserting a violation of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9 (Count I); (2) a class action claim against the Advisor and Individual Defendants asserting a violation of § 20(a) of the Exchange Act 15 U.S.C. § 78t(a) (Count II); (3) a class action claim against the Advisor and Individual Defendants asserting a breach of fiduciary duty (Count III); (4) a class action claim against the Individual Defendants and Defendant Bowers asserting the aiding and abetting of the breach of fiduciary duty (Count IV); (5) a shareholders' derivative claim against the Advisor and Director Defendants asserting a violation of § 14(a) of the 1934 Securities Exchange Act, 15 U.S.C. § 781 (Count V); (6) a shareholders' derivative claim against the Advisor and the Individual Defendants asserting a breach of fiduciary duty (Count VI); and (7) a class action and shareholders' derivative claim

against Wells, Williams, Miller, Bowers, and Fretz asserting unjust enrichment (Count VII).

The defendants have moved to dismiss the Amended Complaint [Doc. No. 106]. The defendants argue that Counts I and II do not adequately state a claim for breach of the duty of disclosure and that the plaintiff failed to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). As to Counts III through VII, the defendants argue that these are derivative claims and the plaintiff failed to meet the pre-suit demand requirements for derivative claims. Alternatively, the defendants argue that the decisions challenged in Counts III through VII are subject to the protection of the business judgment rule.

**LEGAL ANALYSIS**

The defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), which requires an assessment of whether the plaintiff has set forth claims upon which this court may grant relief. Under the United States Supreme Court's recent articulation of the analytic standard involved in applying this rule, this court must construe the amended complaint in favor of plaintiff, accept the factual allegations contained in the Amended Complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. See Bell Atlantic Corp. v.

Twombly, 550 U.S. ____, ____, 127 S. Ct. 1955, 1964-65 (2007). To be considered plausible, a claim must be more than merely conceivable. Bell Atlantic Corp., 550 U.S. at ____, 127 S. Ct. at 1974. Thus, "[d]ismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised." Id.

In considering a motion to dismiss under Rule 12(b)(6), "the Court may take judicial notice of the contents of relevant public documents that were required to be filed with the Securities Exchange Commission ("SEC") and were actually filed." In re Bellsouth Corp. Securities Litigation, 355 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1280 (11th Cir. 1999)). Additionally, the court may consider evidence outside the pleadings that is undisputedly authentic and on which plaintiffs specifically relied in the complaint. Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999). In the instant case, the Proxy and the Lexington offers were filed with the SEC and specifically relied upon by the plaintiffs in the Amended Complaint. Accordingly, this evidence will considered by this court in resolving the motion to dismiss.

**A. Section 14(a) claims (Counts I and V)**

Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder prohibit the inclusion of false or misleading material, including omissions, which render the

material false or misleading, in proxy statements or other communications soliciting proxies. 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9(a). The defendants argue that the plaintiff's § 14(a) claims fail because (1) the Proxy included all material information, and (2) the plaintiff did not comply with the heightened pleading requirements of the PSLRA and Rule of Civil Procedure 9(b). In response, the plaintiff argues that the alleged omissions to the Proxy were material and that its § 14(a) claims do not sound in fraud, removing those claims from heightened pleading requirements of the PSLRA and Rule 9(b).

First, the court notes that many of the facts that the plaintiff alleges were omitted from the Proxy were actually contained in the Proxy. In these instances, there can be no § 14(a) violation. Second, with regard to facts that were actually omitted from the Proxy, there is a § 14(a) violation only when the facts omitted were material.

**1. Allegations of Omissions or Falsehoods**

In Count I of the Amended Complaint, the plaintiff alleges six categories of information that were misrepresented or omitted from the Proxy:

(a) third-party offers to purchase Wells REIT and the details of these offers;

(b) the likelihood that a Listing would even occur;

(c) the reasons for the Internalization and whether the Internalization is in the best interests of the shareholders and the Company if some exit strategy other than a Listing materializes;

(d) the alternatives to a listing that were explored in context of evaluating and recommending the Internalization, such as the Company liquidating, or the Company engaging in business combination, or buyout of the shareholders' stock;

(e) that the defendants could have provided (but did not) a mechanism by which, if the Company did not List by the January 30, 2008 deadline, the Internalization would be reversed or rescinded;

(f) that the defendants could have provided (but did not) a mechanism whereby the Internalization Consideration and the dilutive effect of the Merger and Internalization on the Company's shareholders would have to be appropriately adjusted to more completely reflect the benefit the self-advisement conferred on the Company if an alternative exit strategy to a Listing is effectuated.

[Doc. No. 103 at 128-29].

Additionally, in another section[3] of the Amended Complaint, the plaintiff raised nine allegations of omissions in the Proxy [Doc. No. 103 at 76-117]. To the extent that these additional allegations are not duplicative of those properly raised within Count I, the Amended Complaint alleges that:

> (g) the Proxy contained materially false and misleading statements concerning the pricing of Wells REIT's stock;
>
> (h) the Proxy contained materially false and misleading statements concerning several ancillary service agreements which will provide additional fees to affiliates of the Advisor;
>
> (i) the Proxy contained materially false and misleading statements concerning the subordinated incentive fee;
>
> (j) the fairness opinion was false and misleading;

---

[3] These allegations were not specifically addressed in the defendants' motion to dismiss. In the response brief, the plaintiff took the position that the defendants did not seek dismissal of these additional allegations and argued that this failure foreclosed the defendants from moving to the dismiss these additional allegations in the future. The court notes that the defendants moved to dismiss Count I in its entirety. The fact that the plaintiff failed to specifically allege within Count I all the facts it contends support that ground for relief cannot be used by the plaintiff to prevent a challenge to its claims. In fact, the plaintiff's complaint seems to be the kind of verbose, shotgun pleading that the Eleventh Circuit has repeatedly condemned. <u>See</u> <u>Davis v. Coca-Cola Bottling Co. Consolidated</u>, No. 05-12988, 2008 WL 314962 (11th Cir. February 6, 2008); <u>Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.</u>, 305 F.3d 1293 (11th Cir. 2002); <u>Byrne v. Nezhat</u>, 261 F.3d 1075 (11th Cir. 2001). Regretfully, the court did not require the plaintiff to file a recast complaint as the Eleventh Circuit has strongly suggested be done. The court will, however, address the grounds for dismissal raised in the defendants' reply brief with respect to those allegations outside of Count I.

(k) the Proxy contained materially false and misleading statements about a prior valuation done of the Advisor;

(l) the Proxy contained materially false and misleading statements about the Advisor's performance;

(m) the Proxy failed to disclose which, if any, strategic alternatives were considered by the Board.

The court will examine the allegations of omission and the Proxy itself to determine whether material facts were omitted. An omitted fact is immaterial unless "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote," TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976), and unless its "disclosure . . . would have been viewed by the reasonable shareholder as having significantly altered the 'total mix' of information made available." Id. "While materiality is generally a question of fact reserved for the jury, alleged misrepresentations are immaterial as a matter of law where a court determines that no reasonable investor could have been swayed by the alleged misrepresentation." In re Amdocs Ltd. Securities Litigation, 390 F.3d 542, 547 (8th Cir. 2004).

**a. Third-Party Offers**

In the Amended Complaint, the plaintiff alleges that the offers made by Lexington Realty Trust ("Lexington") in letters dated March 5, 2007 and April 5, 2007, were material facts that

should have been contained in the Proxy or the Supplement [Doc. No. 103 at 68-72]. The defendants argue that the Lexington offers were not material because they were merely tentative expressions of interest of an acquisition of Wells REIT, while the subject matter of the Proxy, the Internalization, was a proposed acquisition by Wells REIT.

The defendants oversimplify the contents of the Lexington offers. The crucial information that was material to shareholders was that a higher stock price was offered if Internalization did not occur. See Exs. 3 and 4 to the motion to dismiss [Doc. No. 106]. There can be no doubt that this information is material, as it would be considered important by a reasonable shareholder in deciding whether to vote for or against Internalization.

**b. Likelihood Listing Would Occur**

The plaintiff alleges that "based on industry trends, at the time the Proxy was filed, it was at least as likely that the Company would not list, as it was the Company would list" [Doc. No. 103 at 80]. The plaintiff contends that this was a material fact that should have been included in the Proxy.

The defendants, on the other hand, contend that the Proxy and the Proxy Supplement repeatedly disclosed that "[t]here can be no assurance that we will determine to list." See Proxy Statement at ii, 3, 18, 26 and 44 [Ex. 1 to Doc. No. 106]; Proxy Supplement at

unnumbered pages 1-2 [Ex. 2 to Doc. No. 106]. Additionally, the Proxy informed shareholders that in the event the listing did not occur, the Board was required to undertake an orderly liquidation and sale of assets. See Proxy at 3 [Ex. 1 to Doc. No. 106]. The Proxy Supplement went further to inform shareholders that if a listing does not occur, potential options include: "commencing a liquidation of our assets, pursuing a merger or other business combination with a third party or seeking stockholder approval to amend our articles of incorporation to extend the date by which we must either complete a Listing or commence a liquidation of our assets." See Proxy Supplement at 1 [Ex. 2 to Doc. No. 106].

Thus, it appears that the information the plaintiff claims was omitted from the Proxy was in fact contained therein. While the Proxy did not undertake an analysis of "industry trends," in order to inform shareholders of what similarly-situated companies were doing, the Proxy did sufficiently inform shareholders that the listing may or may not occur. Additionally, the Proxy Supplement explained to shareholders what avenues would be available to the Company should the listing not occur. Accordingly, the plaintiff fails to state a claim for relief on this issue.

**c. Reasons for the Internalization/ Value of Internalization if Listing Does Not Occur**

First, the plaintiff alleges that the Proxy failed to give shareholders meaningful reasons for the Internalization. Second, the plaintiff alleges that the Proxy failed to explain to shareholders how the Internalization would serve their best interests if some exit strategy other than a Listing materialized.

A review of the Proxy demonstrates that it contained detailed information regarding reasons for the Internalization. See Proxy at 44-45 [Ex. 1 to Doc. No. 106]. Additionally, the Proxy Supplement disclosed to shareholders that the anticipated benefits of the Internalization may not be realized if a strategy other than listing is pursued. See Proxy Supplement at 1-2 [Ex. 2 to Doc. No. 106]. Thus, the court finds that the shareholders were adequately informed regarding the reasons for the proposed Internalization as well as the possibility that Internalization may not be beneficial should the listing not occur. Accordingly, the plaintiff fails to state a § 14(a) claim as to this issue.

**d. Benefits of Internalization Under An Alternative Exit Strategy**

The plaintiff alleged that the Proxy failed to provide shareholders with any information regarding the costs or benefits that would result from Internalization in the event the Company

took an alternative to listing, i.e., a liquidation of assets, a merger or other business combination with a third party, or an extension of the date by which the Company must list or liquidate. A review of the Proxy indicates, however, that shareholders were informed that even if a listing does not occur, the Internalization would be beneficial because there would be a reduction in operating costs when the Company no longer has to pay advisory, property management, and other fees and expenses related to the external Advisor. See Proxy at 2 [Ex. 1 to Doc. No. 106]. Thus, the information regarding benefits of the Internalization absent a listing was contained in the Proxy. Accordingly, the plaintiff has failed to state a claim for relief with regard to this alleged omission.

**e. The Viability of a Mechanism to Reverse the Internalization, if the Company Did Not List by January 30, 2008**

The plaintiffs complain that the Proxy failed to inform shareholders that the Board could have provided a mechanism to reverse Internalization if the listing did not occur. A proxy statement, however, need not include the "panoply of possible alternatives" in the course of the action proposed. Behrens v. Wometco Enterprises, Inc., 118 F.R.D. 534, 540 (S.D. Fla. 1988) (citing Umbriac v. Kaiser, 467 F.Supp. 548, 553 (D. Nev. 1979)).

The court finds that this information is merely one of many possible alternatives to the action proposed in the Proxy and is therefore unnecessary. Therefore, the plaintiff fails to state a claim for relief on this issue.

**f. Viability of a Mechanism to Alter the Internalization Consideration and the Dilutive Effect of the Merger and Internalization if the Listing Is Not Effectuated**

Like subsection (e) above, the plaintiff is complaining that the Proxy did not inform shareholders that it was possible to put a mechanism in place to reduce the amount paid for Internalization if the listing did not occur. This information is nothing more than an alternative to the action proposed in the Proxy. See Behrens, 118 F.R.D. at 540. This information, which the plaintiff alleges was wrongfully omitted from the Proxy, is not material. Accordingly, the plaintiff fails to state a claim for relief on this issue.

**g. Pricing of Wells REIT's Stock**

The plaintiff alleges that the Proxy should have included information on the trading prices of comparable REITs' stock and the quantification of the effect of different valuations on the Internalization Consideration. Additionally, the plaintiff complains that the Proxy did not inform shareholders of the Lexington offers or of the fact that the price per share offered

therein exceeded the defendant's per share price related to the Internalization Consideration. Because the court has already concluded that the Lexington offers as well as the per share prices offered therein were material facts that should have been disclosed in the Proxy, the court will only consider the plaintiff's argument regarding the trading prices of comparable REIT's stock.

A review of the Proxy indicates that it contained a thorough discussion of comparable REIT's involved in internalization transactions, including a comparison of purchase prices paid for advisory services. See Proxy at 62-66 [Ex. 1 to Doc. No. 106]. Accordingly, the Proxy contained the material information regarding pricing of the Wells REIT's stock. Therefore, the plaintiff fails to state a claim for relief on this issue.

**h. Ancillary Service Agreements**

The plaintiff contends that the Proxy falsely states that after Internalization, Wells REIT will no longer pay advisory and property management fees. According to the plaintiff, Wells REIT continues to pay the Advisor's affiliates for these services.

A review of the Proxy indicates, however, that shareholders were informed that upon Internalization, the existing management agreements would terminate and that Wells REIT would enter into new agreements including the Transition Services and Support Services Agreements. See Proxy at 89-92 [Ex. 1 to Doc. No. 106]. The Proxy

even provided the fees that would be paid pursuant to these agreements. See id. Accordingly, the Proxy contained the material information regarding the ancillary services agreements. Therefore, the plaintiff fails to state a claim for relief on this issue.

**i. Subordinated Incentive Fee**

The plaintiff argues that the Proxy made false statements regarding the contractually-agreed-upon Subordinated Incentive Fee, a payment to be made to the Advisor upon listing. According to the plaintiff, this fee served as an objective compensation formula under which the Advisor would be compensated based on the Company's performance upon listing. The result of the Internalization was to terminate the Advisor and eliminate this provision. Apparently, the plaintiff contends that shareholders should have been told that the actual purpose of the Internalization was to circumvent the incentive fee agreement and provide a guaranteed payment.

There is no merit to the plaintiff's argument. It appears that it is the offering and prospectus documents to which the plaintiff takes exception on this point. The incentive fee was to be an objectively determined payment to the Advisor, as an outside entity, upon listing. The Internalization was a purchase of the Advisor that occurred prior to a listing. Therefore the incentive fee was no longer payable upon listing. The plaintiff complains

that shareholders were not told in the offering and prospectus documents that Wells REIT would have to purchase the Advisor prior to a listing. This assertion completely misconstrues the Internalization as it is proposed in the Proxy. The Proxy informs shareholders that the Board believed Internalization would be beneficial to the Company should the listing occur. Therefore, there is no false or misleading information within the Proxy pertaining the subordinated incentive fees. Accordingly, the plaintiff fails to state a claim for relief on this issue.

**j. Fairness Opinion**

The Proxy included the Houlihan Lokey Fairness Opinion, which concluded that the Internalization Consideration was fair to Wells REIT from a financial point of view. The plaintiff argues that the inclusion of this Fairness Opinion in the Proxy served to mislead shareholders by suggesting that some purportedly independent entity had conducted an assessment of the Internalization. Instead, according to the plaintiff, the Fairness Opinion was flawed, devoid of credibility and reliability, and was used to mask the defendants' wrongdoing.

Statements of opinion or belief are actionable only if they are both objectively and subjectively false. Virginia Bankshares v. Sandberg, 501 U.S. 1083, 1095 (1991). "To plead the falsity of a statement of opinion, a plaintiff must plead with particularity

why the statement of opinion was objectively and subjectively false. A fairness opinion is objectively false if the subject matter of the opinion is not, in fact, fair, and is subjectively false if the speaker does not, in fact, believe the subject matter of the opinion to be fair. Bond Opportunity Fund v. Unilab Corp., No. 99 Civ. 11074(JSM), 2003 WL 21058251, at * 5 (S.D. N.Y. May 9, 2003). In this case, the plaintiff has failed to allege that Houlihan Lokey did not believe the subject matter of the opinion to be fair. Rather, the plaintiff takes issue with the assumptions upon which the fairness opinion is based. But, the plaintiff concedes that these assumptions were disclosed to shareholders in the Proxy. Accordingly, the plaintiff's allegations regarding the Houlihan Lokey Fairness Opinion fail to state a claim for relief.

**k. Prior Valuation of the Advisor**

The plaintiff alleges that the Proxy was misleading because it stated that there had been a prior valuation done of the Advisor but never explained the increase from that prior value to the amount that served as the Internalization Consideration. A review of the Proxy indicates that the 2005 valuation of the Asset Management Advisory Agreement, the Acquisition Advisory Agreement, and the Master Property Management Agreement was done as a result of the restructuring of the companies composing the Advisor. The purpose of this valuation, according to the Proxy, was to project

a cash flow expected to be generated by the three agreements between Wells REIT and the Advisor. See Proxy at 43 [Ex. 1 to Doc. No. 106].

When Wells REIT became interested in acquiring the Advisor, the amount of the Internalization Consideration was determined through a series of negotiations, which were thoroughly disclosed in the Proxy. See Proxy at 55 [Ex. 1 to Doc. No. 106]. While the plaintiff complains that the difference in the cash flow valuation of $71 million and the Internalization Consideration of $175 should have been explained to shareholders, these value estimates are not comparable. Perhaps the plaintiff could make a valid argument regarding a failure to explain differences in valuations of the Advisor if both estimates were within the context of acquiring the Advisor. This is not the case here. Therefore, the plaintiff's allegations regarding the difference in the Internalization Consideration and the 2005 valuation fails to state a claim for relief.

**l. The Advisor's Performance**

The plaintiff alleges that the Proxy omitted information on how the Advisor had performed based on industry and role specific criteria. A review of the Proxy indicates that the Advisor's financial performance as well as the quality of services provided by the Advisor was explicitly discussed in the Proxy. See Proxy at

33-38, 128-35 [Ex. 1 to Doc. No. 106]. The plaintiff completely ignores these disclosures and offers the court no basis for a claim regarding the omission of information on the Advisor's performance. Accordingly, the allegations in the Amended Complaint as to a lack of information on the Advisor's performance fail to state a claim for relief.

**m. Strategic Alternatives**

The plaintiff alleges that the Proxy failed to provide meaningful information, evaluation, or discussion concerning strategic alternatives considered by the Special Committee in approving and recommending the Internalization. A review of the Proxy reveals otherwise. Shareholders were informed that after considering alternatives such as continuing as a going concern, potential liquidation of assets, or potential Listing, the Board recommended the Internalization. See Proxy at 45 [Ex. 1 to Doc. No. 106]. It appears that the plaintiff is merely arguing that more detail should have been given about the viability of the alternatives to listing. The court finds, however, that the Proxy disclosed all material information on the consideration of alternatives for the Company.[4] Accordingly, the allegations

[4] The plaintiff reiterates its allegations related to disclosure of the Lexington Offers in this section of the Amended Complaint. The court considers these allegations to be subsumed by ¶ 304 of the Amended Complaint. Therefore, dismissal of the

regarding disclosure of strategic alternatives fail to state a claim for relief.

**2. Heightened Pleading Requirement**

The counts within the Amended Complaint setting forth § 14(a) violations clearly allege that the defendants acted negligently. There is no allegation of the intent necessary to state a cause of action for fraud. Courts have held that § 14(a) claims can be based on negligent misrepresentation rather than solely upon fraud. In re Premiere Technologies Inc., No. 1:98-CV-1804-JOF, 2000 WL 33231639, at *8 n.5 (N.D. Ga. Dec. 8, 2000). Moreover, the defendants concede that a § 14(a) claim may be based on negligent conduct. See Br. in Support of the Defs' M. to Dismiss the Am. Compl. at 10 [Doc. No. 106-2]. Therefore, the heightened pleading requirements of the PSLRA and Rule 9(b) are not applicable to the plaintiff's § 14(a) claims. Accordingly, the motion to dismiss on this basis is DENIED.

**B. Section 20(a) claim (Count II)**

Section 20(a) of the Exchange Act, extends liability to a "controlling person" where a securities violation is found. 15 U.S.C. § 78t(a); Brown v. Enstar Group, Inc., 84 F.3d 393, 395-97

---

general allegations regarding the omission of strategic alternatives from the Proxy does not include the allegations regarding the Lexington offers and the underlying details.

(11th Cir. 1996). Because the court has determined that portions of the § 14(a) claims in the Amended Complaint state a claim for relief, these remaining allegations are sufficient to support a § 20(a) claim. Therefore, the motion to dismiss regarding Count II is DENIED.

**C. Derivative Claims**

Federal Rule of Civil Procedure 23.1 provides that a complaint in a derivative action "shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Substantively, a shareholder derivative suit is governed by the law of the state of incorporation. Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 108-09 (1991). Because Wells REIT is a Maryland corporation, Maryland law controls its actions. Before bringing a derivative suit under Maryland law, the shareholder must either make a demand on the board of directors that the corporation bring the suit, or show that demand is excused as futile. Kamen, 500 U.S. at 96; Waller v. Waller, 49 A.2d 449, 453 (Md. 1946).

In this action, the defendants argue that Counts III through VII are derivative and are subject to the demand requirement.

While Count V and VI are pled only as derivative claims, the plaintiff argues, however, that the breach of fiduciary claims (Counts III and IV) and unjust enrichment claim (Count VII) are properly brought as both direct and derivative claims. First, the court will analyze each disputed claim to determine whether the claims are solely derivative. Next, because it is undisputed that the plaintiff did not make a demand on the board, the court will determine whether the derivative claims asserted by the plaintiff are subject to the demand futility exception.

**1. Whether Breach of Fiduciary Duty and Unjust Enrichment Claims are Solely Derivative in Nature**

Counts III and IV are labeled by the plaintiff as direct claims brought on behalf of the class alleging breach of fiduciary duty (III) and aiding and abetting the breach of fiduciary duty (IV). The plaintiff labels Count VII as a direct and derivative claim predicated on unjust enrichment. The defendants argue that despite the plaintiff's characterization of these claims as, at least in part, direct, all of these claims are derivative in nature.

Determining whether a claim is direct or derivative does not depend on the label given to the claim by the plaintiff. Rather, the court must analyze the nature of the claims raised in the complaint under the applicable law. Paskowitz v. Wohlstadter, 822

A.2d 1272, 1276 (Md. Ct. Spec. App. 2003). State law governs the question of whether a claim is direct or derivative. Kamen, 500 U.S. at 108-09. Because Wells REIT is a Maryland corporation, this court will apply Maryland law to make this determination.

In Waller, 49 A.2d at 452, the Maryland Court of Appeals explained the Maryland common law of shareholder derivative actions:

> It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder though the injury may incidentally result in diminishing or destroying the value of the stock. The reason for this rule is that the cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation, and such an injury, although it may diminish the value of the capital stock, is not primarily or necessarily a damage to the stockholder, and hence the stockholder's derivative right can be asserted only through the corporation. The rule is advantageous not only because it avoids a multiplicity of suits by the various stockholders, but also because any damages so recovered will be available for the payment of debts of the corporation, and, if any surplus remains, for distribution to the stockholders in proportion to the number of shares held by each.
>
> Generally, therefore, a stockholder cannot maintain an action at law against an officer or director of the corporation to recover damages for fraud, embezzlement, or other breach of trust which depreciated the capital stock or rendered it valueless. Where directors commit a breach of trust, they are liable to the corporation, not to its creditors or stockholders, and any damages recovered are assets of the corporation, and the equities of the creditors and stockholders are sought and obtained

> through the medium of the corporate entity . . . . The rule is applicable even when the wrongful acts were done maliciously with intent to injure a particular stockholder. It is immaterial whether the directors were animated merely by greed or by hostility toward a particular stockholder, for the wrongdoing affects all the stockholders alike. It is accordingly held that a stockholder cannot sue individually to recover damages for injuries to the corporation, notwithstanding that the directors may have entered into an unlawful conspiracy for the specific purpose of ruining the corporation . . . .

(Citations omitted.) See also Danielewicz v. Arnold, 769 A.2d 274, 283-87 (Md. App. 2001).

"In deciding whether a shareholder may bring a direct suit, the question the Maryland courts ask is not whether the shareholder suffered injury; if a corporation is injured those who own the corporation are injured too. The inquiry, instead, is whether the shareholders' injury is distinct from that suffered by the corporation." Struogo v. Bassini, 282 F.3d 162, 170 (2nd Cir. 2002) (citing Tafflin v. Levitt, 608 A.2d 817, 820 (Md. App. 1992)).

With regard to the unjust enrichment claim (Count VII), the plaintiff alleged that defendants Wells, Williams, Miller, Bowers, and Fretz were unjustly enriched at the expense of and to the detriment of the company and its shareholders [Doc. No. 103 at 152]. In this claim, the plaintiff has not alleged any injury to shareholders that is distinct from the injury to the company

itself. Accordingly, the unjust enrichment claim is derivative in nature and is subject to the demand requirement.

The breach of fiduciary duty claims (Counts III and IV) are more difficult to classify. Both claims contain allegations of harm to the corporation and harm to the shareholders directly. The court will examine each count in detail to determine what parts are direct and what parts are derivative.

**a. Count III**

In Count III of the Amended Complaint, the plaintiff asserted a claim on behalf of the class against the Advisor and the Individual Defendants alleging a breach of fiduciary duty. According to the plaintiff, the following harm resulted from the breach of fiduciary duty: "The shareholders suffered injury to their individual economic interests and their voting rights as a result of the wrongful conduct of the Individual Defendants and the Advisor, and several Individual Defendants received unfair benefits, at the expense of the shareholders." Amended Compl. at 139 [Doc. No. 103]. The portion of the claim asserting a cause of action for the harm to shareholders' voting rights is properly brought as a direct claim. See, e.g., Gentile v. Rossette, 906

A.2d 91, 100 (Del. Supr. 2006).[5] But, many of the allegations contained within Count III are not related to this harm.

The specific allegations of wrongdoing within Count III are:

> [B]ased upon Wells REIT's dismal financial performance and condition, had the Individual Defendants properly evaluated the performance of the Advisor, the Director Defendants should not have renewed the Advisory Agreements or, if renewed, should have a significantly modified fee structure that reduced the Advisor's fees dramatically.
>
> [E]ach of the Director Defendants breached his fiduciary duties to the Class members by failing to evaluate the performance of the Advisor and permitting and causing Wells REIT to enter into the proposed Merger and Internalization, which places the Advisor's and Director Defendants' own personal self-interests above the Class members' best interests.
>
> [E]ach of the Director Defendants breached his fiduciary duties to the Class members by failing to implement appropriate measures to ensure that the Advisor and the Advisory Agreements did not become a vehicle for wrongful self-dealing.
>
> Each of the Director Defendants breached his fiduciary duties to the Class members by failing to monitor the Advisor to assure that the administrative procedures, operations and programs of the Company are in the best interests of the shareholders and are fulfilled.
>
> Each of the Director Defendants breached his fiduciary duties to the Class members by failing to determine whether the compensation provided for the Advisor in its contract with the Company is justified.

---

[5] With respect to issues of corporate law, Maryland courts often look to Delaware caselaw. See generally Werbowsky v. Collomb, 766 A.2d 123, 143 (Md. 2001)(noting respect properly accorded Delaware decisions on corporate law).

> Each of the Individual Defendants and the Advisor breached his or its fiduciary duties to Class members by causing Wells REIT to enter into the proposed Merger and Internalization, which placed the Advisor's and Individual Defendants' own personal self-interests above the Class members' best interests, and by seeking to accomplish the Merger by means of a false and misleading Proxy statement.

[Doc. No. 103 at 138-39].

Only that portion of the final allegation that claims the Individual Defendants and the Advisor caused Wells REIT to enter into the proposed Merger and Internalization though means of a false and misleading Proxy statement relates to harm that can be redressed through a direct shareholder action. Accordingly, the defendants' motion to dismiss as it applies to Count III is DENIED to the extent that the allegations of damage to voting rights, which was caused by the false and misleading Proxy statements. The remaining allegations are derivative in nature because these allegations relate to harm to the corporation alleged to have been caused by the Individual Defendants and Advisor overpaying for the Advisor's services. All allegations that are derivative in nature are subject to the demand requirements.

**b. Count IV**

In Count IV of the Amended Complaint, the plaintiff asserts a claim by the class against the Individual Defendants, Defendant Bowers, and the Advisor for aiding and abetting a breach of

fiduciary duty. In this count, the plaintiff makes a general allegation of harm [Doc. No. 103 at 143]. However, contained within Count IV are allegations that the Individual Defendants, Defendant Bowers, and the Advisor knew that the Director Defendants disseminated a Proxy Statement which contained false and misleading statements [Doc. No. 103 at 141-42]. Thus, the harm associated with this action, despite the plaintiff's failure to delineate it specifically, is to the voting rights of shareholders. Accordingly, the defendants' motion to dismiss as it applies to Count IV is DENIED to the extent that the allegations relate to harm to voting rights. The remaining allegations are derivative in nature because these allegations relate to harm to the corporation rather than directly to the shareholders. All allegations that are derivative in nature are subject to the demand requirements.

**2. Demand Futility**

In a shareholder derivative suit, the making of a pre-suit demand is both a procedural requirement and a matter of Maryland substantive corporate law; the demand requirement is not simply a procedural nicety. Werbowsky v. Collomb, 766 A.2d 123, 134 (Md. 2001). As with most jurisdictions, however, Maryland recognizes a demand futility exception. In 2001, the Maryland Court of Appeals took an exhaustive look at the demand utility exception and clarified that it is a "very limited" exception and held that a

demand is futile only when the allegations "clearly demonstrate, in a very particular manner" that:

> (1) making a demand, or the delay in waiting for a response to the demand, "would cause irreparable harm to the corporation;" or
>
> (2) a majority of the directors are so personally and directly conflicted or committed to the disputed decision that they cannot reasonably be expected to respond to a demand in good faith and in accordance with the business judgment rule.

Id. at 144.

In this action, the defendants contend that the plaintiff has failed set forth allegations sufficient to invoke the demand futility exception. The plaintiff on the other hand argues that it has alleged particularized facts sufficient to satisfy either prong of Werbosky.

**a. Irreparable Harm**

The plaintiff contends that the Wells REIT shareholders were faced with imminent irreparable harm because the defendants waited until 11 months before the deadline to list or liquidate to propose the Internalization to shareholders without telling them whether the listing would occur. According to the plaintiff, there was no time to wait for a response to any demand.

The court notes initially that the plaintiff did not assert irreparable harm as a part of the "Derivative Demand Allegations"

in the Amended Complaint [Doc. No. 103 at 43-53]. Moreover, as both the Maryland court and this court have held, the plaintiff has not established that any damages resulting from the actions complained of in this case will result in irreparable harm. The harm alleged is monetary in nature and can be compensated through monetary damages. See Transcript of April 9, 2007 Proceedings at 101 [Doc. No. 90]; July 9, 2007 Order at 6 [Doc. No. 104]. Thus, the conclusory arguments in the response to the motion to dismiss regarding the lack of time to file the required demand are insufficient to meet the Werbosky standard. See Sekuk Global Enterprises Profit Sharing Plan v. Kevenides, Nos. 24-C-03-007496, 24-C-03-007876, 24-C-03-008010, 2004 WL 1982508, *4 (Md. Cir. Ct., May 25, 2004).

**b. Board Members Personally or Directly Conflicted**

As to the second prong of Werbosky standard, the plaintiff argues that the following allegations from the Amended Complaint [Doc. No. 103 at 43-53] are sufficient to establish the demand would have been futile:

> (1) three of the ten members of the Wells REIT Board of Directors directly or indirectly owned percentages of the Advisor (Wells 92%, Williams 1%, and Miller 1%).
>
> (2) five of the ten members of the Wells REIT Board of Directors served on multiple boards of Wells-affiliated entities in addition to the Wells REIT Board;

(3) two of the ten members of the Wells REIT Board of Directors served as Trustees of the Wells Family of Real Estate Funds; and

(4) all directors had a predetermined objective to consummate the Internalization as evidenced by the Board's failure to disclose in the Proxy the negotiations and offers by Lexington.

The Werbosky court made it clear that the issue of futility is discrete and does not go to the merits of the underlying complaint –- i.e., whether there was, in fact, self-dealing, corporate waste, or a lack of business judgment with respect to the challenged decision or transaction. Werbowsky, 766 A.2d at 144. Thus, the allegations regarding the omission of the Lexington offers from the Proxy, a component of the challenged action that is the subject of this lawsuit, cannot be considered as a factor in determining whether demand was futile. Thus, the court is left with nothing more than allegations that each member of the Board did not have the independence required to exercise proper business judgment in the face of a demand.

In assessing whether these allegations are sufficient, this court is mindful that the Werbosky court emphasized that the futility exception must be narrowly construed because it "essentially eliminates any chance at meaningful pre-litigation alternative dispute resolution." Id. Furthermore, this court finds the Second Circuit's application of the Werbowsky framework

instructive. In Scalisi v. Fund Asset Management, L.P., 380 F.3d 133 (2d Cir. 2004), the plaintiffs based their futility arguments on the fact that the directors of the Merrill Lynch Focus Twenty Fund, Inc., were appointed by the fund's investment adviser and were therefore beholden to it for their large salaries. Id. at 136-37. The Second Circuit, however, would not excuse the plaintiffs' failure to make a demand, noting “the importance of the demand requirement even when a director would be hostile to the action.” Id. at 141. The Second Circuit focused on the usefulness of the demand requirement in providing “directors –- even interested, non-independent directors -– the opportunity to consider, or reconsider, the issue in dispute.” Id. at 141 (citing Werbowsky, 766 A.2d at 144).

The plaintiff urges the court to rely on Felker v. Anderson, No. 04-0372-CV, 2005 WL 602974 (W.D. Mo. 2005), in determining whether the allegations in the complaint are sufficient to meet the Werbosky standard. Notably, the Felker case is the only post-Werbosky case reviewing demand futility under Maryland law to find that demand was futile.[6] Moreover, Felker appears to ignore

[6] See In re Infosonics Corporation Derivative Litigation, No. 06cv1336 BTM, 2007 WL 2572276, at * 7 (S.D. Cal. Sept. 4, 2007); In re Merrill Lynch Investment Management Funds Securities Litigation, 434 F. Supp. 2d 233, 241 (S.D.N.Y., 2006); Moonlight Investments, Ltd. v. John, 192 S.W.3d 890,893 (Tex. App., 2006); In re Morgan Stanley and Van Kampen Mutual Fund Securities Litigation, No.

Werbowsky's clear admonition that a court should not "excuse the failure to make demand simply because a majority of the directors approved or participated in some way in the challenged transaction or decision." In re CNL Hotels & Resorts, Inc., 2005 WL 2219283, at *5 n.18 (M.D. Fla. Sept. 13, 2005) (quoting Werbowsky, 766 A.2d at 143-44). Accordingly, this court does not find Felker to be persuasive.

---

03Civ.8208(RO), 2006 WL 1008138, *13 (S.D.N.Y. April 18,2006); In re Oppenheimer Funds Fees Litigation, 419 F. Supp. 2d 593, 596 (S.D.N.Y., 2006); In re American Mut. Funds Fee Litigation, No. CV 04-5593-GAFRNBX, 2005 WL 3989803, at *5-6 (C.D.Cal., Dec. 16, 2005); In re Alliance Bernstein Mutual Fund Excessive Fee Litigation, No. 04 Civ. 4885(SWK), 2005 WL 2677753, at *7 (S.D.N.Y., Oct. 19, 2005); In re Davis Selected Mutual Funds Litigation, No. 04Civ.4186(MGC), 2005 WL 2509732, *4 (S.D.N.Y., Oct. 11, 2005); In re Dreyfus Mutual Funds Fee Litigation, 428 F. Supp. 2d 342, 353-54 (W.D. Pa., 2005); In re CNL Hotels & Resorts, Inc. Securities Litigation, Nos. 604CV1231ORL31KRS, 604CV1341ORL19JGG, 2005 WL 2219283, at *5 (M.D. Fla. Sept. 13, 2005); In re Franklin Mutual Funds Fee Litigation, 388 F. Supp. 2d 451, 470 (D. N.J., 2005); Benak v. Alliance Capital Management L.P., No. Civ.A.01-CV-5734(JLL), 2005 WL 1285652, at *2-3 (D. N.J. May 23, 2005); Scalisi, 380 F.3d at 141-42; Sekuk Global Enterprises, Nos. 24-C-03-007496, 24-C-03-007876, 24-C-03-008010, 2004 WL 1982508, at *3-6; In re Merrill Lynch Focus Twenty Fund Investment Company Act Litigation, 218 F.R.D. 377, 381 (E.D.N.Y., 2003).

Based on the foregoing, the plaintiff has not met its burden of clearly demonstrating that the members of the Board of Directors were so personally and directly conflicted or committed to the challenged decision that they could not reasonably be expected to respond to a demand in good faith and within the scope of the business judgment rule. Therefore, the court dismisses Counts V, IV, and VII of the Amended Complaint for failure to make a demand on the Board. Additionally, the court dismisses the portions of Count III and IV containing allegations that relate to harm to the corporation rather than directly to the shareholders.

**3. Business Judgment Rule**

As set forth above, Counts III and IV contain allegations regarding the contents of the Proxy that are properly brought as direct claims. Therefore, these portions of Counts III and IV are not precluded by the failure to make a demand. The defendants contend alternatively, that these claims should be dismissed because the plaintiff has failed to plead facts sufficient to overcome the protections of the business judgment rule.

Maryland has codified the business judgment rule, which provides that an act by a director or corporation is presumed to be in good faith and in the best interests of the corporation. See Md. Code Ann., Corps. & Ass'ns § 2-405.1(e) (2007). In order to rebut the business judgment rule's presumption that a board acted

in good faith the plaintiff must allege facts which, if accepted as true, establish that the board was either interested in the outcome of the transaction or lacked the independence to consider objectively whether the transaction was in the best interest of its company and all of its shareholders. Orman v. Cullman, 794 A.2d 5, 22 (Del. Ch. 2002).

> To establish that a board was interested or lacked independence, a plaintiff must allege facts as to the interest and lack of independence of the individual members of that board. To rebut successfully business judgment presumptions in this manner, thereby leading to the application of the entire fairness standard, a plaintiff must normally plead facts demonstrating that a majority of the director defendants have a financial interest in the transaction or were dominated or controlled by a materially interested director.

Id. (Citations omitted).

Here the plaintiff has alleged that three of ten of the Director Defendants, Wells, Miller, and Williams had financial interest in the Internalization. And, according to the allegations of the Amended Complaint, the remaining Director Defendants, Buchanan, Carpenter, Carter Keogler, Moss, Strickland, and Woody (collectively "the Independent Directors"), lacked independence and acted bad faith.

However, the only portions of Counts III and IV to survive this motion to dismiss relate to the statements contained in the Proxy. There are no specific allegations in the complaint

regarding the Independent Directors lack of independence in drafting, producing, ratifying, and disseminating the Proxy. Moreover, all the allegations related to the statements made in the Proxy specifically allege negligence on the part of the Director Defendants rather than bad faith. Accordingly, the plaintiff has failed to make allegations sufficient to rebut the presumption of the business judgment rule with respect to the direct shareholder claims for breach of fiduciary duty and aiding and abetting the breach of fiduciary duty. Therefore, Counts III and IV are dismissed in their entirety.

## CONCLUSION

(1) The plaintiff's motion for oral argument [Doc. No. 113] is DENIED;

(2) The defendants' motion to dismiss the amended complaint [Doc. No. 106] is GRANTED IN PART and DENIED IN PART: Counts III through VII are dismissed in their entirety; Counts I and II are dismissed with the exception of the allegations of failure to disclose the details of the Lexington offers;

(3) The plaintiff is DIRECTED to file within twenty days a recast complaint setting forth only those causes of action and supporting allegations that have been found to survive the defendants' motion to dismiss. The court suggests that, in recasting its complaint, the plaintiff avoid those tactics that

result in a shotgun pleading. Specifically, the plaintiff shall: (1) refrain from incorporating factual allegations by reference into the legal claims for relief; (2) refrain from using the term *inter alia* to precede a list of factual allegations; and (3) specify which allegations of fact support which causes of action. The defendants shall have twenty days to file their answer to the recast complaint.

SO ORDERED, this 31st day of March, 2008.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge