```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF GEORGIA
                          ATLANTA DIVISION
```

|  |  |
|---|---|
| In Re: Wells Real Estate Investment Trust, Inc. Securities Litigation | CIVIL ACTION<br><br>NO. 1:07-CV-862-CAP |

**O R D E R**

This action is before the court on the plaintiff's motion for class certification [Doc. No. 142] and the defendants' motion for leave to file a surreply [Doc. No. 247].  As an initial matter, the motion for leave to file a surreply [Doc. No. 247] is GRANTED; the surreply was considered by the court.

## I.   FACTUAL BACKGROUND

The plaintiff filed this action in the District Court of Maryland on March 12, 2007 [Doc. No. 1], as a purported class action and derivative complaint against the Wells Real Estate Investment Trust, Inc. ("Wells REIT"), certain Wells REIT directors and officers, and the company's advisor ("Advisor").  The case was transferred to this court on April 17, 2007.

The plaintiff is Washtenaw County Employees' Retirement System ("ERS"), an entity that held 1,274,794 shares of Wells REIT stock on February 28, 2007, and continues to hold shares of Wells REIT stock.  Wells REIT is a Maryland corporation with its principal executive offices located in Norcross, Georgia.  Wells REIT is primarily engaged in the acquisition and ownership of commercial real estate properties.  It is a public unlisted REIT, which means that (1) it is public because it is registered with the Securities and Exchange Commission ("SEC"), can sell to the investing public rather than only to "qualified investors," and is required to file reports with the SEC; and (2) it is unlisted because its securities are not listed on a national stock exchange.

The Advisor was made up of third parties who contracted with Wells REIT to provide real estate management, advisory services, and administrative functions.  Specifically, the following entities comprised the Advisor: (1) Wells Capital, Inc.; (2) Wells Management Company, Inc.; (3) Wells Real Estate Funds, Inc.; (4) Wells Real Estate Advisory Services, Inc.; (5) Wells Advisory Services I, LLC; and (6) Wells Government Services, Inc.  All of the officers and some of the directors of the Advisor were Wells REIT's officers and directors.  The Advisor's authority to conduct the day-to-day operations of Wells REIT was delegated through the

Wells REIT's Articles of Incorporation and a series of Advisory Agreements.

The Individual Defendants are comprised of eleven individuals who fall into three categories.  The first category of Individual Defendants is the Management Director Defendants and consists of: (1) Leo F. Wells, III; (2) Douglas P. Williams; (3) Randall D. Fretz; and (4) Donald A. Miller.  The second category of Individual Defendants is the Non-Management Director Defendants and consists of: (1) Bud Carter; (2) Donald S. Moss; and (3) Neil H. Strickland. The third category of Individual Defendants is the Non-Management Director Defendants & Members of the Special Committee[1] and consists of: (1) Michael R. Buchanan; (2) Richard W. Carpenter; (3) William H. Keogler, Jr.; and (4) W. Wayne Woody.

Finally, the plaintiff has named as a party defendant Robert E. Bowers.  Bowers has served as the CFO of Wells REIT since April 16, 2007.

On February 5, 2007, Wells REIT announced that it had entered into an agreement with the Advisor to internalize the Advisor ("Internalization").  The proposed consideration for the acquisition was to be the issuance of Wells REIT stock representing

---

[1] The Special Committee was appointed by the Wells REIT Board in December 2004 to evaluate strategic alternatives available to the company, including internalization of the Advisor.

just over 4% of the outstanding shares of Wells REIT, which amounted to approximately $175 million.  This proposed transaction was to be submitted to a vote by the Wells REIT stockholders on April 11, 2007.  In advance of the vote, Wells REIT filed the definitive proxy and a supplement (collectively "Proxy") with the SEC regarding the proposed Internalization.

After adjudicating the defendants' motion to dismiss, which was granted in part and denied in part [Doc. No. 115], the court directed the plaintiff to file a recast complaint.  The recast complaint [Doc. No. 117] contains two counts: (1) a class action claim against the Advisor and the Individual Defendants asserting a violation of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9 (Count I), and (2) a class action claim against the Advisor and Individual Defendants asserting a violation of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (Count II).

## II.  LEGAL ANALYSIS

The plaintiff has proposed a class consisting of "all shareholders of Wells REIT (including their heirs, successors, and assigns) who were entitled to vote on the proposals in Wells REIT's Schedule 14A Proxy Statement dated February 27, 2007, as amended or supplemented."

Class certification is governed by Federal Rule of Civil Procedure 23.  Subsection (a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four requirements are commonly referred to as "the prerequisites of numerosity, commonality, typicality, and adequacy of representation."  General Telephone Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 330 (1980).  The burden of proving these prerequisites is on the party seeking class certification.  Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 456 (11th Cir. 1996).

Rule 23(b) provides that, in addition to the Rule 23(a) prerequisites, a class must fall into one of three categories: (1) the pursuance of separate actions would create a risk of inconsistent verdicts or would, as a practical matter, make individual adjudications dispositive of the interests of class members who are nonparties; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the putative class such that declaratory or injunctive relief with respect to the class as a whole would be appropriate; or (3)

questions of law or fact common to members of the class predominate over issues affecting individual members, and class adjudication is preferable to other methods of litigation for purposes of a fair and efficient resolution of the controversy.

And finally, prior to the certification of a class, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim. Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000). To have standing, a named plaintiff must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court. Sosna v. Iowa, 419 U.S. 393, 403 (1975).

## A.   Rule 23(a)

### 1.   Numerosity

The numerosity requirement simply asks whether there are so many members of the class that joinder of them all would be impracticable. Fed. R. Civ. P. 23(a)(1). Factors determining whether joinder of class members is practicable include the size of the class, the geographical dispersion of the class, the ease with which class members may be identified, and the nature of the action and the size of each class member's claim. Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. 1981).

The plaintiff alleges that at the time in question, there were approximately 109,000 Wells REIT shareholders.  Obviously, joinder of this many individuals would be impossible.  The defendants have not objected to class certification with regard to numerosity. Accordingly, the court finds that the proposed Class meets the numerosity prerequisite of Rule 23(a).

### 2.   Commonality

To satisfy the commonality requirement, the plaintiff must show that there are questions of law or fact common to the entire class.  Fed. R. Civ. P. 23(a)(2).  It is not necessary that all questions of law and fact be common.  National Broadcasting Co. v. Cleland, 697 F.Supp. 1204, 1216 (N.D. Ga. 1988); Strube v. American Equity Investment Life Insurance Co., 226 F.R.D. 688, 695 (M.D. Fla. 2005).

Questions common to the class will include, *inter alia*, whether the alleged omissions from the Proxy rendered it false and misleading, and whether shareholders sustained any damages.  The defendants do not oppose class certification on commonality grounds.  The court, therefore, finds that the commonality requirement is met in this case.

### 3.   Typicality

A class representative's claims or defenses must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3). Typicality is related to the element of commonality, but focuses on the "individual characteristics of the named plaintiff in relation to the class."   Prado-Steiman, 221 F.3d at 1279.   A representative's claim is typical if there is a "nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class."  Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984).  "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  Id.  However, typicality does not require identical claims or defenses, and minor factual variations will not render a class representative's claim atypical.  Id.

Here, ERS is proceeding on exactly the same legal theories that would be pursued by any shareholder.  Furthermore, ERS's claims arise from the precisely the same course of conduct as the claims of the proposed class members.  Also, the defendants do not object to class certification on typicality grounds.  Therefore, the typicality prerequisite is satisfied.

### 4.   Adequacy of Representation

As the final prerequisite under subsection (a), the class representative must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The underlying purpose behind this requirement is to assure that the legal rights of absent class members are protected.  Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  This requirement is generally met if (1) the class representatives do not have interests antagonistic to other class members, and (2) plaintiff's counsel can adequately represent the interests of the class.  Id. Additionally, class representatives must possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative.  Id.

In this case, the defendants oppose class certification based on alleged inadequacy of the class representatives.  Specifically, the defendants argue that the plaintiff lacks knowledge as to the basics of this litigation, has remained uninvolved in the litigation, and has failed to oversee proposed class counsel. Additionally, the defendants argue that the plaintiff's counsel cannot adequately represent the class because counsel (1) had communications and knowledge regarding the information that is

9

claimed to have been withheld by the defendants; and (2) are

necessary trial witnesses based on those communications.

### a.  Lead Plaintiff

The Eleventh Circuit's seminal case on adequacy of a lead

plaintiff in a securities action is <u>Kirkpatrick</u>.  In that case, the

court instructed

> a principal factor in determining the appropriateness of
> class certification is the forthrightness and vigor with
> which the representative party can be expected to assert
> and defend the interests of the members of the class.

<u>Kirkpatrick</u>, 827 F.2d at 726 (citation and internal quotations

omitted).  But the court cautioned:

> adequate class representation generally does not require
> that the named plaintiffs demonstrate to any particular
> degree that individually they will pursue with vigor the
> legal claims of the class.  Although the interests of the
> plaintiff class certainly would be better served if the
> named plaintiffs fully participate in the litigation, the
> economics of the class action suit often are such that
> counsel have a greater financial incentive for obtaining
> a successful resolution of a class suit than do the
> individual class members.  It is not surprising, then,
> that the subjective desire to vigorously prosecute a
> class action . . . quite often is supplied more by
> counsel than by the class members themselves.

<u>Id.</u> at 727 (internal citations omitted).  Therefore, while "a

potential class is entitled to more than blind reliance upon even

competent    counsel    by    uninterested    and    inexperienced

representatives," <u>id.</u> (citation and internal quotations omitted),

in securities cases . . . where the class is represented
by competent and zealous counsel, class certification
should not be denied simply because of a perceived lack
of subjective interest on the part of the named
plaintiffs unless their participation is so minimal that
they virtually have abdicated to their attorneys the
conduct of the case.

Id. at 728.

The defendants urge this court to apply a heightened adequacy
standard as announced by the Fifth Circuit in Berger v. Compaq
Computer Corp., 257 F.3d 475, 483-84 (5th Cir. 2001).  In Berger,
the Fifth Circuit held that the Private Securities Litigation
Reform Act ("PSLRA") raises the standard adequacy threshold to
require that "securities class actions be managed by active, able
class representatives who are informed and can demonstrate they are
directing the litigation."  Id. at 483.  However, the Eleventh
Circuit has yet to address whether the PSLRA requires a heightened
analysis of the adequacy of class representatives.  In re
HealthSouth Corp. Securities Litigation, 213 F.R.D. 447, 461 (N.D.
Ala. 2003).  Furthermore, Judge Thrash of this court rejected the
argument that the PLSRA increased the adequacy standard:

There is nothing on the face of the [PSLRA] that requires
and/or permits modification of the standard for adequacy
under Rule 23(a)(4). Indeed, in Baffa v. Donaldson,
Lufkin & Jenrette Sec. Corp., 222 F.3d 52 (2d Cir. 2000),
a post-[PSLRA] case, the Second Circuit expressly adopted
the Surowitz [v. Hilton Hotels Corp., 383 U.S. 363(1966)]
standard with respect to Rule 23(a)(4) when the court

11

granted class certification to plaintiff over defendant-appellee's objection that plaintiff was inadequate because he lacked knowledge of the case. Baffa, 222 F.3d at 61. The court stated that the Supreme Court in Surowitz "expressly disapproved of attacks on the adequacy of a class representative based in a representative's ignorance." Id. Moreover, the legislative history of the lead plaintiff provision expressly rejects the idea of any modification of Rule 23(a)(4) by the [PSLRA]. The Conference Report accompanying passage of the [PSLRA] states that "[t]he provisions [of the PSLRA] relating to the appointment of a lead plaintiff are not intended to affect current law with regard to challenges to the adequacy of the class representative or typicality of the claims among the class." H.R. Conf. Rep. No. 104-369, at 34 (1995).

Thus, the Defendants have failed to convince this Court that there is any reason for this Court to deviate from controlling Eleventh Circuit precedent to follow a conflicting case from the Fifth Circuit.

In re Theragenics Corp. Securities Litigation, 205 F.R.D. 687, 696 (N.D.Ga. 2002).

This court agrees with Judge Thrash's conclusion that the PSLRA does not increase the threshold showing a plaintiff must make under Rule 23(a)(4). Therefore, this court declines to follow the Berger decision and will conduct the adequacy analysis under Kirkpatrick.

William Goebel is Chairman of the ERS Board and was the plaintiff's Rule 30(b)(6) designee. Based on his deposition testimony, the defendants argue that Goebel knows almost nothing

about the substance or procedural posture of this case. The defendant's position, however, is based upon isolated portions of Goebel's deposition and statements taken out of context. While Goebel could not precisely articulate the plaintiff's legal claims under the Exchange Act, he did indicate that the ERS believes it was wronged through the failure of the defendants to reveal opportunities to sell its shares (i.e., the Lexington Offers). Goebel Dep. at 113. In fact, Goebel identified the company that made the tender offers (which shareholders were not informed about) as Lex-Win. Goebel Dep. at 116. Additionally, Goebel testified that ERS's counsel has provided periodic written reports on the litigation, which are reviewed by the Board in closed session. Goebel Dep. at 94-95.

There is no requirement under <u>Kirkpatrick</u> that the lead plaintiff must possess expert knowledge of the details of the case. Rather, <u>Kirkpatrick</u> indicates that the lead plaintiff is expected to rely on its counsel for advice and guidance. <u>Kirkpatrick</u>, 827 F.2d at 728. After reviewing Goebel's entire deposition, the court finds that ERS, in its role as lead plaintiff, has been and continues to be an active participant in this litigation and has fulfilled its duty to oversee counsel.

### b.  Lead Plaintiff's Counsel

With regard to the plaintiff's counsel, the defendants have made much of a series of emails that indicate one of the attorneys representing the plaintiff was communicating with Michael Ashner, the CEO of Lexington, during the timeframe of the tender offers made by Lexington to the Wells REIT.  These communications are referred to in emails between members of the plaintiff's litigation team.  The court has reviewed all the emails and they simply do not contain the smoking gun the defendants urge the court to see.

First, the defendants contend that the emails demonstrate that the plaintiff's counsel had knowledge of the very information that the plaintiff claims should have been disclosed in the Proxy, i.e., that Lexington had an interest in purchasing shares of the Wells REIT.  The defendants mischaracterize the plaintiff's claim in this case.  It was not merely Lexington's interest in purchasing shares of Wells REIT that the plaintiff claims was omitted from the Proxy.  The plaintiff's claim is the Proxy did not inform shareholders of the details of the Lexington letters of March 5 and April 5, 2007, which indicate that a higher price-per-share would be offered if Internalization did not occur.  Thus, even assuming that plaintiff's counsel did know that Lexington intended to make tender

14

offers, it is the failure to disclose the details of these offers that is the subject matter of the plaintiff's claims.

More importantly, even taking the defendants' speculative version of the facts as true, knowledge on the part of the plaintiff or the plaintiff's counsel is irrelevant.  The Supreme Court has instructed that there is no requirement of proof that the defect in the Proxy actually had a decisive effect on the voting. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384-85 (1970). Therefore, evidence that the plaintiff or its counsel was aware of Lexington's interest in buying Wells REIT stock does nothing to negate the plaintiff's claim in this case.

Finally, the defendants claim that the plaintiff's counsel are necessary trial witnesses with regard to the materiality of the Lexington offers, and therefore cannot represent the class.  An omitted fact is immaterial unless "there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote," TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976), and unless its "disclosure . . . would have been viewed by the reasonable shareholder as having significantly altered the 'total mix' of information made available." Id. "While materiality is generally a    question    of    fact    reserved    for    the    jury,    alleged

misrepresentations are immaterial as a matter of law where a court determines that no reasonable investor could have been swayed by the alleged misrepresentation." In re Amdocs Ltd. Securities Litigation, 390 F.3d 542, 547 (8th Cir. 2004).

The defendants argue that the plaintiff's counsel's perception that Lexington's interest in Wells REIT was less than concrete supports their claim that the Lexington offers were not material facts required to be included in the Proxy. The court disagrees. As set forth above and in this court's ruling on the defendants' motion to dismiss, the material fact that the plaintiff has alleged was omitted from the Proxy was that Lexington was willing to offer a higher price for Wells REIT shares if the Internalization did not occur. Thus, counsel's perception that Lexington's interest in Wells REIT was tentative is simply not a factor in the materiality analysis on this claim.

## B. Rule 23(b)

The plaintiff asserts that class certification is appropriate in this case because the defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2). The defendants have raised no objection to class certification with

regard to Rule 23(b)(2).  This court finds that because any relief granted to one shareholder would be applicable to all shareholders in this case, Rule 23(b)(2) is satisfied.

Additionally, the plaintiff asserts that Rule 23(b)(3) is satisfied.  Rule 23(b)(3) requires that common questions of fact and law predominate over individual questions and a class action would be a superior method to adjudicate the controversy.  Fed. R. 23(b)(3).    The   defendants   offer   no   opposition   to   class certification as to Rule 23(b)(3).

To satisfy the predominance requirement, the plaintiff must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (citations and quotation marks omitted).   Here, all proposed class members received the same Proxy, thus, the alleged omissions had the same impact on the proposed class members.  Of course, individual class members will differ in the number of shares owned resulting in variances in each class member's damages, but this is not sufficient to defeat predominance.  See Allapattah Services, Inc., v. Exxon Corp., 333 F.3d 1248, 1261 (11th Cir. 2003).

The superiority requirement in Federal Rule of Civil Procedure 23(b)(3) directs the court's attention to "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay v. Humana, Inc., 382 F.3d 1241, 1269 (11th Cir. 2004). The superiority requirement is grounded in the idea that the litigation is to be carried out as efficiently and as fairly as possible for all parties. Amchem Products Inc. v. Windsor, 521 U.S. 591, 615 (1997).

The dispute at issue here is particularly well-suited for a class action. Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts. Accordingly, the court finds that a class action is superior to other methods to resolve this controversy.

**C. Standing**

Standing is achieved when the named plaintiff is a member of the class it seeks to represent at the time the class is certified. Sosna, 419 U.S. at 403. At the time the Proxy was disseminated, the plaintiff held 1,274,794 shares of Wells REIT stock. Additionally, the defendants have raised no objection to the plaintiff's standing in this case. Accordingly, the court finds that plaintiff has standing to represent the proposed Class.

**D.    Appointment of Lead Counsel**

Pursuant to Rule 23(g), a court that certifies a class must appoint class counsel.    Factors that the court should consider include:

> (i)  the  work  counsel  has  done  in  identifying  or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other  complex  litigation,  and  the  types  of  claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv)  the  resources  that  counsel  will  commit  to representing the class.

Fed. R. Civ. P. 23(g)(1).  The court has reviewed the resumes of the three firms currently representing the plaintiff.  Exs. A, B, and C to the motion for class certification [Doc. No. 142].  The court finds that these firms have extensive expertise in litigating federal securities actions.  Therefore, the court concludes that Lead Counsel will fairly and adequately represent the Class.

### III.   CONCLUSION

For the foregoing reasons,

(1) the defendants' motion for leave to file a surreply [Doc. No. 247] is GRANTED;

(2) the plaintiff's motion for certification of the Class [Doc. No. 142] is GRANTED;

(3) the law firms of Chitwood Harley Harnes LLP; Chimicles & Tikellis LLP; and Labaton Sucharow LLP are appointed to serve as Class counsel pursuant to Federal Rule of Civil Procedure 23(g); and

(3) The parties are DIRECTED to submit a joint proposal to this court within forty-five days for notice to Class members pursuant to Federal Rule of Civil Procedure 23(c)(1)(B).

SO ORDERED, this 16th day of September, 2009.


/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge