UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____
                                    )
In re Wells Real Estate Investment  )   Civil Action No.: 1:07-cv-00862-CAP
Trust, Inc. Securities Litigation   )
_____ )   <u>CLASS ACTION</u>

**PLAINTIFF'S RESPONSES TO DEFENDANTS' JOINT STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 56 and Northern District of Georgia Local Rule 56.1 B(3), Plaintiff hereby provides its response to Defendants' Joint Statement of Additional Undisputed Material Facts ("Defs' Joint SOAF"). Filed concurrently herewith are Plaintiff's Exhibits in Support of Plaintiff's Reply. ("Reply Ex --").

This response contains individually numbered, concise, non-argumentative responses, which cite evidence and correspond to each of Defs' Joint SOAF. For ease of reference for the Court and the parties, Plaintiff has repeated Defendants' purported undisputed material facts herein, followed by Plaintiff's responses which appear in bold text.

1.      Defendants incorporate, as if fully stated herein, Defendants' Statement of Undisputed Material Facts in Support of Defendants' Summary Judgment Motion (Dkt. # 345) ("Defendants' Statement of Undisputed Material Facts").

*Plaintiff's Response:* **Plaintiff responded to Defendants' Statement of Undisputed Material Facts in Dkt. # 381, Plaintiff's Responses to Defendants' Statement of Undisputed Material Facts in Support of Defendants' Summary Judgment Motion, and incorporates those Responses as if fully stated herein.**

**Plaintiff also incorporates, as if fully stated herein:  (i) Dkt. # 344, Exhibit 1, Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment; and, (ii) Dkt. # 382, Plaintiff's Statement of Additional Facts Pursuant to LR 56.1(B)(2)(b) in Opposition to Defendants' Motion for Summary Judgment.**

2.      The objective of the Confidentiality Agreement was to protect Wells REIT. *See* Deposition of Donald Miller ("Miller Dep.") (Tab 1), at 277.  The record evidence confirms that confidential agreements are frequently used in such circumstances.  *See* Deposition of Sara Brown ("Brown Dep.") (Tab 2), at 72; Deposition of Joseph Bonventre ("Bonventre Dep.") (Tab 3) at 152-53. In fact, Lexington required Mr. Ashner to execute an agreement containing an almost identical confidentiality and standstill provision in connection with the termination of his position with Lexington. Bonventre Dep. at 150-54. Mr. Miller specifically

testified that securing Lexington's silence "wasn't an objective" during discussions about the Confidentiality Agreement. Miller Dep. at 278, 283.

**_Plaintiff's Response:_ Deny. The evidence cited does not support the contentions, as it incorrectly paraphrases and makes unsupported inferences or implications about the evidence. Moreover, the Confidentiality Agreement included the following provisions:**

**(i)   "you [Lexington] will not and you will direct your Representatives not to disclose to any other person. . . (i) the fact that discussions or negotiations may take place, are taking place or have taken place concerning a possible transaction involving [Wells REIT] or any of the terms, conditions or other facts with respect thereto . . ."** _Compendium Ex. 14, Confidentiality and Standstill Agreement, Wash1-KS-00000013._

**(ii)   "In the event that discussions regarding a negotiated transaction involving the Properties cease, nothing in this letter agreement shall preclude either party from initiating discussions on a non-public basis with the other party regarding a possible negotiated transaction. . .** _Compendium Ex. 14, Confidentiality and Standstill Agreement, Wash1-KS-00000015._

3.   Plaintiff's expert, Richard Roberts, testified that "[n]obody" would "take seriously" a letter from him purporting to express value judgments about an impending transaction. *See* Deposition of Richard Roberts ("Roberts Dep.") (Tab 4), at 134. Mr. Roberts also testified that the February 26, 2006 "draft" letter that Wells REIT received from Lexington Realty Trust ("Lexington") would be analyzed differently than a signed letter and that such a "draft" letter "just looks

3

bad." *Id.* at 152. Mr. Roberts further testified that that "[b]oth cases [*i.e.*, *Basic v. Levinson*, 485 U.S. 224 (1988) and *TSC v. Northways*, 426 U.S. 438 (1976)] apply all the time." *Id.* at 131.

>    *Plaintiff's Response:* The cited testimony is irrelevant to, and therefore inadmissible to prove, any issue in the case because the Letters at issue were not "drafts" and do not include the February 26, 2007 draft letter.
>
>    Furthermore, Plaintiff denies the contention. The evidence cited does not support the contentions, as it incorrectly paraphrases and makes unsupported inferences or implications about the testimony. Mr. Roberts testified that:
>
>    - "Both cases apply all the time, but how they're applied may be different depending on the factual context." Reply Ex. 8, Roberts Tr. at 131:16-18.
>
>    - "Yes, sir. I -- I do think it's important that it was from someone in the industry. Did it have to be from someone in the industry? No. I mean, if Warren Buffet had sent the letter, would I take it seriously? Of course, I would. If the letter had came from me, would I take it seriously? Nobody will." Reply Ex. 8, Roberts Tr. at 133:25 – 134:6.
>
>    - Q: And would -- At this stage in the game, at February 26, 2007, would the board have been authorized in your opinion to apply both TSC and Basic to make the determination?
>
>       A.   If they were making -- If they were making a materiality analysis on the basis of this draft, they would still be looking at it. I mean, it still has the same information in it. You read the cases collectively so you still end up with TSC, but your conclusion may be different.
>
>       Q.  Because it's in draft form?

4

> **A.  Because it's draft form.**
>
> **Q.  And because it might -- Because it's in draft form, may not be as credible as it would if it were not in draft form?**
>
> **A.  Well, it just looks bad.  Reply Ex. 8, Roberts Tr. at 152:5-20.**

4. Defendants' expert, Randall Thomas, testified that the so-called two tiered pricing is "inextricably bound up in the merger discussions" and that "it lacks any independent significance outside of the merger proposals." *See* Deposition of Randall Thomas ("Thomas Dep.") (Tab 5), at 108-09.

> *Plaintiff's Response:* **Plaintiff has moved to exclude the testimony of Randall Thomas [Dkt # 340].  Plaintiff further asserts that the testimony cited is incomplete and incomprehensible and irrelevant to any issue in the case.  Plaintiff otherwise admits that Mr. Thomas testified (Tr. at 108:13-24) that:**
>
> **"I can understand that that is what makes this information inextricably bound up in the merger discussions, because in the event that a merger proposal was to move forward, <u>I can understand why, from Lexington's perspective, they would attach a low value, if not a zero value to the internalization, because presumably they already have management, and they would be viewing this as a property they would acquire, that they could use their current management to use</u>." (Emphasis added).**

5. The Independent Directors concluded that Lexington's proposal to acquire Wells REIT was not credible. *See*, *e.g.*, Deposition of Wayne Woody ("Woody Dep.") (Tab 6), at 167, 178; Deposition of William H. Keogler, Jr.

5

("Keogler Dep.") (Tab 7), at 96-97; Deposition of Michael R. Buchanan ("Buchanan Dep.") (Tab 8), at 236-37.

 *Plaintiff's Response:* **The purported undisputed fact is not material to the determination of: Defendants' liability or defenses under Section 14(a), whether the Lexington Letters are material under Section 14(a), and whether the Plaintiff and the Class were injured.**

 **Subject to and without waiving that response, Plaintiff denies this contention. The evidence does not support any contention that prior to the vote on the Internalization the "Independent Directors" concluded the proposals made by Lexington were not credible.**

 **The March 7, 2007 minutes of the meeting of Wells REIT's Special Committee do not include any mention that the Special Committee determined that the March 5th Lexington Letter was not credible. Tab 42 to Defs' SOF, Minutes of the March 7, 2007 Meeting at WashI_00002209. Similarly, the April 10, 2007 minutes of the meeting of Wells REIT's Independent Directors do not include any mention that the Independent Directors determined that the April 5th Lexington Letter was not credible.** *See* **Tab 53 to Defs' SOF, Minutes of the April 10, 2007 Meeting at WashI-00002214.**

 **In addition, the written presentations of the advisors to the Special Committee do not question the credibility of the Lexington offers or reflect any advice to the Special Committee suggesting that the offers were not credible. Tab 54 to Defs. SOF at WashI-BK-000052, 00067; Response to Defs. SOF #63. To the contrary, the presentation of JP Morgan suggested that the Company would entertain further proposals from Lexington after the Internalization. Ex. 15 to Pltf's SJ Opp at JPM 00158, 3rd and 4th bullets: "Deliver message to LXP that the board will continue to evaluate its alternatives. . .and in due course consideration of any revised LXP offer"; and "Organize process to accommodate a dual track process. . . and concurrently be in a position to evaluate any third party offers that may surface, including revised terms from LXP."**

6

**Furthermore, no one from Wells REIT ever told Lexington that anyone was concerned that Lexington was not a credible bidder or did not have the financial ability to complete the transaction.** *See* **Pltf's Exhibit 6 in Opp to Defs MSJ, Ashner Dep. Tr. at 321:20-322:3.**

**Finally, one of the Special Committee's financial advisors, Marjorie Bowen of Houlihan Lokey, told Jack Hardin that "Michael Ashner could raise the money [for the March 5 proposal]." Tab 44 to Defs' SOF, March 8, 2007 E-mail from Jack Hardin at Wash1-RH-000262.**

6.      The Independent Directors took seriously their fiduciary duties and adherence to good corporate governance. *See*, *e.g.*, Deposition of Edward "Jack" Hardin ("Hardin Dep.") (Tab 9), at 212-13.

*Plaintiff's Response:* **The purported undisputed fact is not material to the determination of: Defendants' liability or defenses under Section 14(a), whether the Lexington Letters are material under Section 14(a), and whether the Plaintiff and the Class were injured.**

**Furthermore, Plaintiff denies the purported undisputed fact which is not supported by the evidence cited. The evidence cited reflects only Mr. Hardin's testimony that the "Independent Directors" took seriously the process of determining whether or not the April 5 Letter constituted a Superior Proposal under the Merger Agreement.**

7.      The decision to submit the Internalization for shareholder approval was a condition of the Merger Agreement, not a requirement under Maryland law. *See* Definitive Proxy Statement Pursuant to Section 14A of the Securities Exchange Act of 1934 dated February 26, 2007, P-8, (located at Tab 2 in Defendants' Statement of Undisputed Material Facts), at WashI_00003467, 3486);

7

*see also* Agreement & Plan of Merger dated February 2, 2007, P-54, (located at Tab 23 in Defendants' Statement of Undisputed Material Facts), at WashI_00018749.

**     *Plaintiff's Response:* Deny that the decision to submit the Internalization was not a requirement under Maryland law or that it was only a condition of the Merger Agreement.  The evidence cited does not support that contention; Defendants have not cited to any Maryland law provision exempting the merger from a shareholder vote.**

**     Moreover, at the time of the Internalization, Wells REIT's charter (Section 9.5) governed "transactions with Affiliates" and provided that "[t]ransactions between the Company and its Affiliates are further *subject to any express restrictions … adopted by the Directors … by resolution*."  (*See* Tab 2 to Defs' SOF, Proxy at WashI_00003864, D-40 (emphasis added)).  That section governed the Internalization because "we [the Company] are considered an Affiliate of the Advisor…" (*Id.,* Proxy at WashI_00003516, ¶ 3 titled "Overview").**

**     The Board's resolution on January 31, 2007 approving the Internalization contained the "express restriction" that the Internalization Transaction and Merger Agreement with the Advisor were "*all subject to the approval of the stockholders of the Company.*" (Tab 3 to Defs' SOF at WashI_00000091 ¶ 3).   In addition, the Proxy solicited votes to approve an amendment of the Company's charter, termed the Pre-Listing Charter Amendment, to modify certain provisions to reflect that Wells REIT has become self advised, approval of which "requires the affirmative vote of the holders of at least a majority of our outstanding shares of common stock entitled to vote thereon." (Tab 2 to Defs' SOF Proxy at WashI_00003587, 3596 (pg. 106, bottom; 115).**

**     The February 26 Proxy states: "Will my vote make a difference? A: Yes. Your vote is needed to ensure that the proposals can be acted upon. Because we are a widely-held REIT (with more than 100,000 stockholders and, unlike most other public companies, no large**

8

**brokerage houses own substantial blocks of our shares), YOUR VOTE IS VERY IMPORTANT!** *Your immediate response will help avoid potential delays and may save Wells REIT significant additional expenses associated with soliciting stockholder votes*. **We encourage you to participate in the governance of Wells REIT."** See **Defs Resp to Pltf** *UMF # 42; Compendium Ex. 1, Proxy, Deposition Exhibit 8 at WashI_00003491 (pg. 10).*

The February 26 Proxy described the requirement of the approval of the Internalization by a majority of outstanding shares entitled to vote as follows:

> **Because the Internalization involves a transaction in which some of our directors and our officers have a material financial interest, we have determined to solicit stockholder approval of the Internalization so as to empower our stockholders with respect to whether the Internalization should occur. In addition,** *under the Definitive Merger Agreement, the Internalization Proposal is required to be approved by the affirmative vote of holders of at least a majority of our outstanding shares* **of common stock entitled to vote on the Internalization (excluding for this purpose shares of common stock beneficially owned by any of Wells REF, Wells Capital, Wells Management, WASI or their affiliates). Proxies received will be voted FOR this proposal unless stockholders designate otherwise.** *If the required stockholder approval is not received, then the Internalization will not be consummated.*

*See* **Defs Resp to Pltf** *UMF # 44; Compendium Ex. 1, Proxy, Deposition Exhibit 8 at WashI_00003584 (pg. 103, 1st parag.)*.

The February 26 Proxy states *(see* **Defs Resp to Pltf** *UMF # 45)*:

> (i) **"Even if approved by our stockholders at the Special Meeting, the Pre-Listing Charter Amendment Proposal will not be effected unless the Internalization Proposal is approved by our stockholders and the Internalization is consummated."** *Compendium Ex. 1, Proxy, Deposition Exhibit 8 at WashI_00003587 (pg. 106, middle of page)*.

9

> **(ii)** "Approval of this proposal to amend our existing Articles requires the affirmative vote of the holders of at least a majority of our outstanding shares of common stock entitled to vote thereon." *Compendium Ex. 1, Proxy, Deposition Exhibit 8 at WashI_00003587, 96 (pg. 106, bottom; 115)*.

**A February 26, 2007 letter from Leo F. Wells III to financial representatives stated, "In order to accomplish the internalization, we must solicit votes from Wells REIT stockholders on the proposal for internalization and other important related proposals."** *See* **Defs Resp to Pltf's UMF # 48;** *Compendium Ex. 31, Form 8-K filed on February 26, 2007, Exhibit 99.1 Letter to Financial Representatives, Page 2.*

**While the Internalization Transaction, the Merger Agreement, and the Pre-Listing charter amendment were all subject to shareholder approval under Maryland law and the resolution of the Wells board as described above, shareholder approval was also a contractual condition between the parties to the Merger Agreement.**

8.  Plaintiff voted against the Internalization. *See* Deposition of William Goebel ("Goebel Dep.") (Tab 10), at 158.

> *Plaintiff's Response:* **The purported undisputed fact is not material to the determination of: Defendants' liability or defenses under Section 14(a), whether the Lexington Letters are material under Section 14(a), and whether the Plaintiff and the Class were injured.**
>
> **Subject to and without waiving that Response, Plaintiff admits that Plaintiff voted against the Internalization.**

10

Dated February 15, 2010.[1]

        Respectfully submitted,

        **CHITWOOD HARLEY HARNES LLP**

        s/ Krissi T. Gore
        Robert W. Killorin, Ga. Bar No. 417775
        Krissi T. Gore, Ga. Bar No. 687020
        Meryl W. Roper, Ga. Bar No. 238919
        2300 Promenade II
        1230 Peachtree Street, NE
        Atlanta, Georgia 30309
        Telephone: (404) 873-3900
        Facsimile: (404) 876-4476
        RKillorin@chitwoodlaw.com
        KGore@chitwoodlaw.com
        MRoper@chitwoodlaw.com

        Nicholas E. Chimicles
        Kimberly M. Donaldson
        Kimberly L. Kimmel
        **CHIMICLES & TIKELLIS LLP**
        One Haverford Centre
        361 W. Lancaster Avenue
        Haverford, Pennsylvania 19041
        Telephone: (610) 642-8500
        Facsimile: (610) 649-3633
        nick@chimicles.com
        kimdonaldson@chimicles.com
        kimberlykimmel@chimicles.com

        Lawrence A. Sucharow
        Joseph Sternberg

---

[1] In accordance with the Consent Order entered by the Court on January 12, 2010, Plaintiff will file this pleading with the Court on February 19, 2010.

**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lsucharow@labaton.com
jsternberg@labaton.com

*Co-Lead Counsel for Plaintiff*

## **LOCAL RULE 7.1D CERTIFICATION**

Counsel for Plaintiff hereby certifies that the text of this Pleading has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.

                 s/ Krissi T. Gore
                 KRISSI T. GORE
                 Georgia Bar No. 687020
                 **CHITWOOD HARLEY HARNES LLP**

# CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2010, I electronically filed "**PLAINTIFF'S RESPONSES TO DEFENDANTS' JOINT STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**" with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Tony G. Powers    tpowers@rh-law.com
Kimberly L. Myers  kmyers@rh-law.com

Michael R. Smith   mrsmith@kslaw.com
Dan S. McDevitt    dmcdevitt@kslaw.com
Michael J. Cates   mcates@kslaw.com
Bethany M. Rezek   brezek@kslaw.com

In addition, the foregoing was served by email upon same on February 15, 2010.

s/ Krissi T. Gore
Krissi T. Gore
Georgia Bar No. 687020
*Co-Lead Counsel for Plaintiff*

**CHITWOOD HARLEY HARNES LLP**
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, GA 30309
Phone: (404) 873-3900
Fax: (404) 876-4476
Email: kgore@chitwoodlaw.com