UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In Re Wells Real Estate Investment Trust, Inc. Securities Litigation | Civil Action Number: 1:07-cv-00862-CAP<br><br>CLASS ACTION |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' LIMITED MOTION FOR CLARIFICATION OF THE COURT'S AUGUST 2, 2010 ORDER**

## PRELIMINARY STATEMENT

Defendants have improperly styled their motion as a Motion for Clarification [Dkt. 458] ("Motion") to avoid the stringent requirements of a motion for reconsideration. *See Pres Endangered Areas of Cobb's History, Inc. v. Unites States Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), *aff'd*, 87 F.3d 1242 (11th Cir. 1996).

In their Motion, Defendants essentially ask the Court to change its mind and alter the summary judgment rulings in its August 2, 2010 Summary Judgment Order ("Order"). By seeking to present evidence at trial that "the two-tiered pricing terms of the Lexington Letters have no independent significance outside the context of the merger proposal", Defendants once again incorrectly recast Plaintiff's claims, and their Motion contemplates a fundamental reversal of the Court's summary judgment rulings regarding the materiality question presented in this case. Motion pgs. 1, 5 ¶¶ (1), (2).

In addition, Defendants improperly use this "clarification" request as a vehicle to proffer a new issue for summary judgment consideration. Specifically, the Motion seeks an untimely and unsupported finding that "if a jury should find that the price terms only have significance as part of a merger proposal. . . it should find that the price terms are not material." *Id.* at pg. 5 ¶ (3).

The Order clearly and correctly concluded that the issue of materiality did not concern the context of the "merger proposal," but the "two-tiered pricing." Defendants

seek "clarifications" that would eviscerate what the Court found, as a matter of law, to be the relevant facts on the issue of materiality. Defendants' Motion should be denied.

## ARGUMENT

### A. Pertinent Findings from the August 2, 2010 Order.

The Order unequivocally states what fact issues were not left for the jury concerning the materiality of the Lexington Offers:

(1) "The defendants' argument completely ignores the allegations by the plaintiff – that the Lexington Offers were material in the sense that Lexington valued the REIT stock at a higher price if Internalization was not completed." (Order at 10).

(2) "The information that was omitted from the Proxy and the Supplemental Proxy was the fact that Lexington offered more per share in the absence of the Internalization." (*Id.*)

(3) "The likelihood of the Lexington Offers coming to fruition is irrelevant in evaluating the materiality of the information omitted." (*Id.*) [1]

The Order also unequivocally identifies the relevant "context" of the two-tiered pricing of the Lexington Offers:

(1) "Specifically, the court found issues of fact as to Lexington's 'valuation' of the

---

[1] These rulings are entirely consistent with the Court's prior pronouncements on these issues, rulings that Defendants simply refuse to accept. *See* March 31, 2008 Order on Motion to Dismiss [Dkt. 115] at 16 (rejecting Defendants' argument that Lexington Letters were not material because they were "merely tentative expressions of interest" as an oversimplification of the letters' contents); September 16, 2009 Order on Class Certification Motion [Dkt. 321] at 12 ("[defendants'] counsel's perception that Lexington's interest in Wells REIT was tentative is simply not a factor in the materiality analysis on this claim").

Internalization." (Order at 25).

(2) "The defendants dispute whether the two-tiered pricing by Lexington was in fact a 'valuation' of the Internalization. Even in the absence of a specific business analysis . . . the fact remains that Lexington made a tender offer to purchase Wells REIT stock, and for whatever reason, was willing to pay more for the shares in the absence of Internalization." (*Id.* at 11, fn. 4).

(3) "Lexington's CEO stated that in coming up with the two-tiered pricing offer, factors considered included the 'value of the assets related to the price to be paid for the internalization'. . . [i]n other works, the Internalization decreased the overall value of the Wells REIT in Lexington's estimation." (*Id.* at 25).

The Order also held, as a matter of law, that *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976), and not *Basic v. Levinson*, 485 U.S. 224 (1988), is the legal standard to be used to determine materiality under the facts of this case. Order at 9-10, and 25 fn. 8.

### B. The Summary Judgment Papers and Order Do Not Support Granting the Relief Sought by Defendants.

Notwithstanding the Court's findings, Defendants assert that they should still be permitted to prove at trial "that the two-tiered pricing terms of the Lexington Letters have no independent significance outside the context of the merger proposal." Motion pg. 5 ¶ (2), pg. 4 ¶¶ 6-7. Defendants claim that the following sentence from the Order, once "clarified", would support that entitlement: "While the defendants contend that ***the two-tiered pricing offered by Lexington cannot be separated from the context in which it was made*** and point to their expert to support this argument, they have, at best,

established a question of fact for a jury on this issue." Order at 10, Motion pg. 2 ¶ 2 (emphasis added). However, Defendants' so-called "clarification" of the Order is actually a back-door attempt to improperly use evidence at trial that the Court already found, as a matter of law, to be irrelevant to the issue of materiality.

First, Defendants' Motion fails to identify any facts from Defendants' summary judgment filings that illustrate what they mean and intend by the "context" "in which [the two-tiered pricing] was made." Defendants' recently-filed Status Report [Dkt. 459, Exhibit 1, hereto], however, gives some insight into the slight-of-hand objective of Defendants' "clarification" Motion. In the Status Report, Defendants now profess that their experts' uniform adherence to and analysis of the application of *Basic* in this case is easily transformable into a *TSC* paradigm, and, therefore, their experts' testimony about "context" has not been mooted by the Order. *See* Exhibit 1, Status Report at pgs. 4-6.

This is patent sophistry, as a review of Defendants' experts' reports readily reveals. For example, despite Defendants' representations to the contrary, the report of their proffered expert, Mr. Haahr, does not discuss any "context" of the "price differential." Status Report, pg. 6, citing to pages 26-27 of Haahr Report. Rather, the Haahr Report discusses whether the Offers were "fully bona fide purchase offers", "serious expressions of interest", and "'Superior Proposal[s]", and concludes that "it is my opinion that the Wells Committee never had a bona fide offer. . ." *See* Exhibit 2, *hereto*, Haahr Report

excerpt, pgs. 26-27. Apparently disregarding the Order's ruling to the contrary, Defendants somehow claim this testimony provides relevant "context" regarding the "price differential." Similarly, the Status Report cites to the report of Defendants' proffered expert Mr. Gannon at ¶¶ 31-36, as an example of "context" evidence that was allegedly *not* mooted by the Order.[2] *See* Gannon Report, pages 12-15 Dkt. 343-5, Exhibit D to Pltf. Motion in Limine regarding Gannon (filed under seal pursuant to Dkt. 390). These opinions – which do not address the differential in the two tiered pricing contained in the Lexington Offers – were also mooted by the Order, and are not, therefore, relevant "context."[3]

---

[2] None of those paragraphs refer to the two-tiered pricing. Instead, Mr. Gannon opines about: Lexington's capability (¶ 31); Lexington making "low ball", opportunistic offers, generally (¶ 31), and with respect to certain Wells REIT properties (¶ 32); the Letters, in his opinion, not constituting bona fide offers (¶ 34); the actions taken by the Special Committee to evaluate the April 2007 Lexington Letter (¶ 35); and the subsequent mini-tender by Lexington which "raise further doubt that Lexington had the financial capability to consummate the acquisition of all of the shares of Wells REIT" (¶ 36). The Order clearly held that such testimony is irrelevant.

[3] Defendants take these proffered expert opinions about Lexington's "tactical moves" (which were used on summary judgment to denigrate the viability of, and espouse the purported tentativeness of, the Lexington Offers), and attempt to transform them into testimony about the basis for the "pricing differential." This demonstrates a fundamental misunderstanding of the Order. The Court found issues of fact as to Lexington's 'valuation' of the Internalization. Order at 25. Even assuming it was true, evidence that one may have historically made opportunistic or "low-ball offers", does not give any "context" (relevant, meaningful or helpful) to the basis for the difference between the two-tiered pricing in the Letters, and that the Letters set out one price per share without the Internalization and one price per share with the Internalization.

Moreover, Defendants' entire defense, since the inception of this Action, has been constructed on incorrect factual and legal foundations. Specifically, in support of their Motion for Summary Judgment [Dkt. 345] ("Defs. MSJ"), Defendants argued that: "there was no probability that an acquisition by Lexington would occur" (Defs. MSJ at 24-25); Lexington's interest was "preliminary, conditional, and speculative" (*id.* at 25-26); and the pricing is unreliable "soft" information (*id.* at 28-29). *See also,* Defs. MSJ 26-27, discussed *infra*. Accordingly, Defendants' "clarification" of one sentence from the Order, boils down to an attempt to revive arguments that were clearly ruled irrelevant by the Order. Page 10 of the Order does not preserve the arguments set out in Defendants' MSJ at 26-27, Section C (Motion, pg. 2 ¶ 3), and no interpretation of Page 10 of the Order should open the door to fact or expert testimony that the Order, taken as a whole, held irrelevant to the materiality issue. *See* Section A, *supra*.

Defendants' Motion misrepresents what was argued on pages 26-27 of Defendants' MSJ about the "two-tiered" pricing. Specifically, Defendants' MSJ pages 26-27 stated:

> Lexington's indication it might pay more absent the Internalization cannot be divorced from the context in which it was made – **as part of Lexington's preliminary expression of interest in a merger transaction.**
>
> * * *
>
> Lexington's two-tiered pricing statements were part and parcel of an **initial merger proposal** by a party **whose ability and desire to complete such a transaction was, at best, highly questionable**. . . To the extent Lexington was unwilling to place any value on internalized management at Piedmont *in the event of a merger*, **that information is inseparable from the merger proposal**

> **context, and hence must be analyzed under *Basic*** rather than *TSC*. And, as discussed above, **the *Basic* analysis leads to only one conclusion** – the Lexington Letters were immaterial. . .

(Bold & underlining emphasis added). This, too, was the substance and context of the testimony of Randall Thomas, who was cited at page 27 of Defendants' MSJ. *See also* Motion, pg. 2-3 ¶¶ 3-4.

At pages 26-27 of their MSJ, Defendants' argument focused on why the two-tiered pricing could not be divorced from the "merger context." Defendants' argument was made in support of their (rejected) conclusion that *Basic* applied to the materiality inquiry. Defendants also asserted that the "merger context" equated to the tentativeness and lack of viability of the Lexington Offers. Accordingly, the Order's reference to these pages of Defendants' MSJ cannot be read, as Defendants wish, in isolation from the rest of the Order. As in their MSJ, Defendants proffer no "context" other than facts deemed irrelevant and mooted by the Order.[4]

By seeking clarification, Defendants are really asking the Court abandon its repeated and prior consistent rulings in this Action so that Defendants can regale the jury with irrelevant facts about Lexington, Mr. Ashner and the viability of the merger proposals. The Court has consistently rejected Defendants' self-serving interpretation of

---

[4] The only statement from pages 26-27 of Defs MSJ, Section C, that may, arguably, not be mooted is: "They were not an objective independent assessment of the Internalization's value" and Defendants' citations to SOF ¶¶ 41, 57 [Dkt. 345].

Plaintiff's claims.[5] Defendants' request must be rejected.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny the request for relief sought in Defendants' Limited Motion for Clarification of the Court's August 2, 2010 Order.

Dated: August 30, 2010

Respectfully submitted,

/s/ *Kimberly M. Donaldson*
Nicholas E. Chimicles
Kimberly M. Donaldson
Kimberly L. Kimmel
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
kimdonaldson@chimicles.com

/s/ Krissi T. Gore
Robert W. Killorin Ga. Bar No. 417775
Krissi T. Gore Ga. Bar No. 687020
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 873-3900

[5] Accordingly, there is no basis for Defendants' proposed finding, which was never raised prior to this Motion and is not supported in the Motion factually or legally, that "the price terms are not material", "if a jury should find that the price terms only have significance as part of a merger proposal." Motion at 5 ¶¶ (1)-(3).

Facsimile: (404) 876-4476
kgore@chitwoodlaw.com

Lawrence A. Sucharow
Joseph Sternberg
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lsucharow@labaton.com

*Co-Lead Counsel and Class Counsel*

Lawrence P. Kolker
Alexander H. Schmidt
WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
Telephone: (212) 545-4600
Facsimile: (212) 545-4653

Thomas Michaud
Jack Timmony
VANOVERBEKE MICHAUD
& TIMMONY, P.C.
79 Alfred Street
Detroit, Michigan 48201
Telephone: (313) 578- 1200

*Counsel for Plaintiff*

## LOCAL RULE 7.1D CERTIFICATION

Counsel for Plaintiff hereby certifies that the text of this Pleading has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.

/s/ *Kimberly M. Donaldson*
Kimberly M. Donaldson
*Admitted Pro Hac Vice*
**Chimicles & Tikellis LLP**