Exhibit 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In Re Wells Real Estate Investment Trust, Inc. Securities Litigation | Civil Action No. 1:07-cv-00862-CAP |

### STIPULATION OF SETTLEMENT

This Stipulation of Settlement dated December 31, 2012 (the "Stipulation"), is made and entered into by and among the following Settling Parties (as defined further in §IV(1)(1.30) below) to the above-entitled litigation (the "Litigation"): (i) the Lead Plaintiff (as defined further in § IV(1)(1.14) below) (on behalf of itself and each of the Class Members (as defined further in § IV(1)(1.5) below)), by and through their counsel of record in the Litigation; and (ii) Piedmont Office Realty Trust, Inc. (formerly known as Wells Real Estate Investment Trust, Inc.) ("Piedmont" or the "Company"), Wells Capital, Inc., Wells Management Company, Inc., Wells Real Estate Funds, Inc., Piedmont Office Management, LLC (formerly known as Wells Real Estate Advisory Services, Inc.), Wells Advisory Services I, LLC, Piedmont Government Services, LLC (formerly known as Wells Government Services, Inc.), Leo F. Wells, III, Douglas P. Williams, Donald A. Miller, Bud Carter, Donald S.

Moss, Neil H. Strickland, Michael R. Buchanan, Richard W. Carpenter, William H. Keogler, Jr., and W. Wayne Woody[1] (referred to collectively as the "Defendants" (defined further in §IV(1)(1.7) below)), by and through their counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined further in §IV(1)(1.24) below), upon and subject to the terms and conditions hereof and subject to the approval of the United States District Court for the Northern District of Georgia.

## I.   THE LITIGATION

On March 12, 2007, this action was filed in the United States District Court for the District of Maryland as a putative class action and derivative action on behalf of persons who were entitled to vote on the Schedule 14A Proxy Statement that was filed with the SEC on February 26, 2007 by Piedmont (the "Proxy").

---

[1] Wells Capital, Inc., Wells Management Company, Inc., Wells Real Estate Funds, Inc., Piedmont Office Management, LLC (formerly known as Wells Real Estate Advisory Services, Inc.), Wells Advisory Services I, LLC, and Piedmont Government Services, LLC (formerly known as Wells Government Services, Inc.) are hereinafter referred to as the "Advisor Defendants." Leo F. Wells, III, Douglas P. Williams, Donald A. Miller, Bud Carter, Donald S. Moss, Neil H. Strickland, Michael R. Buchanan, Richard W. Carpenter, William H. Keogler, Jr., and W. Wayne Woody are hereinafter referred to as the "Individual Defendants."

2

The case was transferred to the United States District Court for the Northern District of Georgia, Atlanta Division (the "Court") on April 17, 2007. On June 7, 2007, the Court appointed plaintiff Washtenaw County Employees' Retirement System as Lead Plaintiff and approved the Lead Plaintiff's choice of Chimicles & Tikellis LLP, Labaton Sucharow LLP, and Chitwood Harley Harnes LLP as Plaintiff's Co-Lead Counsel.

On August 13, 2007, Defendants moved to dismiss Lead Plaintiff's claims. Following full briefing of the motion, the Court granted in part and denied in part the motion to dismiss on March 31, 2008. Following resolution of Defendants' motion to dismiss, Lead Plaintiff filed the operative complaint in this action, the Second Amended Class Action Complaint, on April 21, 2008 (the "Complaint"). The Complaint alleges claims against all Defendants for violations of Sections 14(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 14a-9 promulgated thereunder and against the Advisor Defendants and the Individual Defendants for violations of Section 20(a) of the Securities Exchange Act of 1934. Thereafter, Plaintiff and Defendants engaged in extensive discovery.

On June 23, 2008, Lead Plaintiff moved the Court for an order certifying the Litigation as a class action under Federal Rule of Civil Procedure 23. Following full

briefing of the motion, the Court granted the motion for class certification on September 16, 2009 certifying the Class (defined below).

On December 4, 2009, the parties filed motions for summary judgment. Following full briefing of the motions, the Court granted in part and denied in part Lead Plaintiff's motion for summary judgment and denied Defendants' motion for summary judgment on August 2, 2010. Thereafter, the Court placed the Litigation on the trial calendar.

On October 7, 2011, the Notice of Pendency of Class Action ("2011 Notice of Pendency") was sent to the Class members which provided Class members the opportunity to exclude themselves from the Rule 23(b)(3) Class by December 22, 2011. Only 20 members of the Class requested exclusion, one of which was withdrawn and one of which was untimely.

Following a pretrial conference with the Court on February 24, 2012, the Litigation was removed from the trial calendar. The Court granted Defendants leave to file a second motion for summary judgment on March 20, 2012. Following full briefing of the motion, the Court granted Defendants' motion for summary judgment on September 26, 2012 ("Summary Judgment Order").

On October 12, 2012, Lead Plaintiff filed a notice of appeal to the Eleventh Circuit Court of Appeals.

On October 11-12, 2012, the Settling Parties held a mediation with Jed Melnick, a neutral mediator with JAMS, Inc. who has extensive experience mediating complex cases like the Litigation. After extensive arm's-length negotiations, the parties reached an agreement in principle to settle the Litigation on October 12, 2012. Lead Plaintiff's appeal, which remained pending at the time the parties reached their agreement in principle to settle the Litigation, has been abated, and the Litigation has been remanded to this Court, pending settlement proceedings.

## II. THE DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Throughout this Litigation, Defendants have denied and continue to deny each and all of the substantive allegations of wrongdoing and liability pleaded against them in the Complaint. Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants also have denied, *inter alia*, the allegations that Lead Plaintiff or the Class have suffered damage or that Lead Plaintiff or the Class were harmed by the conduct alleged in the Litigation. Defendants believe that their defenses to the claims asserted against them are strong and that they would prevail on appeal. Defendants, however, have taken into account the uncertainty and risks of litigation, especially in a complex action such as this Litigation. Defendants have also taken into account that the further

5

defense of the Litigation may be protracted and expensive. This Stipulation shall in no event be construed or deemed to be evidence of an admission or concession on the part of any Defendant with respect to any claim or of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants have asserted. Defendants' decision to settle the Litigation was based on the above considerations and Defendants' determination that it is desirable and beneficial that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.   CLAIMS OF THE LEAD PLAINTIFF AND BENEFITS OF SETTLEMENT

Lead Plaintiff believes that the substantive allegations of wrongdoing and liability pleaded against Defendants in the Complaint and asserted throughout the Litigation have merit and that the evidence developed supports the claims. Lead Plaintiff, however, recognizes and acknowledges the difficulty and risk of getting the Court's Summary Judgment Order reversed on appeal, and the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through the appeal and, if the Court's decision were reversed, further proceedings in the Court. Lead Plaintiff also has taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff also is mindful of

the inherent problems of proof and possible defenses to the violations asserted in the Litigation. Lead Plaintiff believes that the Settlement set forth in this Stipulation confers substantial benefits upon the Class with respect to claims that the Court had adjudicated in Defendants' favor. Based on their evaluation, Plaintiff's Co-Lead Counsel have determined that the Settlement set forth in this Stipulation is fair, adequate, reasonable, and in the best interests of Lead Plaintiff and the Class.

## IV.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff (for themselves and the Class Members) and Defendants, by and through their respective counsel of record, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows:

### 1.    Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1    "Piedmont" or the "Company" means Piedmont Office Realty Trust, Inc. (formerly known as Wells Real Estate Investment Trust, Inc.), including each of its present and former subsidiaries and affiliates.

7

1.2    "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation and who submits a valid Proof of Claim and Release Form, in such form and manner, and within such time, as the Court shall prescribe, to the Claims Administrator.

1.3    "Claims Administrator" means the firm of Heffler, Radetich & Saitta LLP.

1.4    "Class" means the class certified by the Court on September 16, 2009, defined as all shareholders of Piedmont (including their heirs, successors and assigns) who were entitled to vote on the proposals in Piedmont's Schedule 14A Proxy Statement dated February 26, 2007, as amended or supplemented thereafter, excluding from the class the Defendants, the officers and Directors of Defendants at all relevant times, members of each Individual Defendant's immediate family, any entity in which any Defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party. Also excluded from the Class are those persons who timely and validly requested exclusion from the Class pursuant to the Notice of Pendency sent to the Class Members.

1.5    "Class Member" or "Class Members" mean any person who falls within the definition of the Class as set forth in ¶ 1.4 of the Stipulation.

8

1.6    "Costs of Notice and Administration" means:  All costs and expenses incurred in connection with (i) providing the Notice of Proposed Settlement to Class Members, (ii) the administration of the claims of Class Members, (iii) making the distributions of the Net Settlement Fund to Class Members, (iv) administering the Settlement Fund including tax advice and tax preparation for the Settlement Fund, and (v) escrow services.

1.7    "Defendants" means Piedmont, Wells Capital, Inc., Wells Management Company, Inc., Wells Real Estate Funds, Inc., Piedmont Office Management, LLC (formerly known as Wells Real Estate Advisory Services, Inc.), Wells Advisory Services I, LLC, Piedmont Government Services, LLC (formerly known as Wells Government Services, Inc.), Leo F. Wells, III, Douglas P. Williams, Donald A. Miller, Bud Carter, Donald S. Moss, Neil H. Strickland, Michael R. Buchanan, Richard W. Carpenter, William H. Keogler, Jr., and W. Wayne Woody.

1.8    "Defendants' Counsel" means the law firms of King & Spalding LLP and Rogers & Hardin LLP.

1.9    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 7.1 of the Stipulation have been met and have occurred.

1.10    "Escrow Account" means the escrow account to be established by Plaintiff's Co-Lead Counsel at a financial institution that is acceptable to Defendants'

9

Counsel and Defendants' insurers and into which the Settlement Fund shall be paid as provided by ¶ 2.1 of the Stipulation.

1.11 "Escrow Agent" means Huntington Bank, or its successor(s).

1.12 "Final" means when the last of the following with respect to the Order and Final Judgment, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time for the filing of any motion to alter or amend the Order and Final Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time for the filing or noticing of any appeal from the Order and Final Judgment without any appeal having been filed; and (iii) if such motion to alter or amend is filed or if an appeal is filed or noticed, then at the moment that (a) the Order and Final Judgment has been finally affirmed, the time for a petition for writ of certiorari to review the Order and Final Judgment has expired or, if certiorari is granted, the judgment following review pursuant to that grant has been finally affirmed; or (b) any appeal from the Order and Final Judgment or any proceeding on certiorari to review the Order and Final Judgment has been finally dismissed. For purposes of this paragraph, an "appeal" shall not include any appeal that concerns only the issue of attorneys' fees and expenses or the Plan of Allocation of the Settlement Fund. Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to any plan of

10

distribution and/or application for attorneys' fees, costs, or expenses, shall not in any way delay or preclude the Order and Final Judgment from becoming Final.

1.13 "Internalization" means the transaction consummated by Piedmont on April 16, 2007, pursuant to which Piedmont acquired Piedmont Office Management, LLC (formerly known as Wells Real Estate Advisory Services, Inc.) and Piedmont Government Services, LLC (formerly known as Wells Government Services, Inc.), and which was the subject of the Proxy.

1.14 "Lead Plaintiff" means Washtenaw County Employees' Retirement System.

1.15 "Notice of Proposed Settlement," "Notice," or "Settlement Notice" mean: The Notice of Pendency and Proposed Settlement that is to be mailed to the Settlement Class substantially in the form attached hereto as Exhibit A-1. There will be one Settlement Notice used with respect to this Settlement and the settlement of *In re Piedmont Office Realty Trust Securities Litigation* (Civil Action Number 1:07-cv-2660, USDC ND GA) ("*Piedmont* Litigation"), subject to the proposed settlement of the *Piedmont* Litigation being preliminarily approved.

1.16 "Preliminary Approval Order" means the order described in ¶ 3.2 hereof substantially in the form attached hereto as Exhibit A.

11

1.17 "Proxy" means the Schedule 14A Proxy Statement filed with the SEC on February 26, 2007 by Piedmont, as amended and supplemented.

1.18 "Order and Final Judgment" means the judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.19 "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and all of their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.20 "Plaintiff's Counsel" means any counsel who have appeared for the Lead Plaintiff in the Litigation.

1.21 "Plaintiff's Co-Lead Counsel" means the law firms of Chimicles & Tikellis LLP, Labaton Sucharow LLP, and Chitwood Harley Harnes LLP, or their successor(s).

1.22 "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund to be proposed by Lead Plaintiff and Plaintiff's Co-Lead Counsel whereby the Settlement Fund shall be distributed to Authorized Claimants after

payment of expenses of notice and administration of the Settlement; Taxes and Tax Expenses; such attorneys' fees, costs, expenses, and interest as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation, and Defendants and their Related Parties shall have no responsibility or liability with respect thereto.

1.23 "Related Parties" means, with respect to each Defendant, the immediate family members, heirs, executors, administrators, successors, assigns, present and former employees, officers, directors, general partners, limited partners, attorneys, assigns, legal representatives, insurers, reinsurers, and agents of each of them, and any person or entity which is or was related to or affiliated with any Defendant or in which any Defendant has or had a controlling interest, and the present and former parents, subsidiaries, divisions, affiliates, predecessors, successors, general partners, limited partners, employees, officers, directors, attorneys, assigns, legal representatives, insurers, reinsurers, and agents of each of them, as well as all current and former directors and officers of Piedmont, Wells Capital, Inc., Wells Management Company, Inc., Wells Real Estate Funds, Inc., Piedmont Office Management, LLC (formerly known as Wells Real Estate Advisory Services, Inc.), Wells Advisory Services I, LLC, Piedmont Government Services, LLC (formerly known as Wells Government Services, Inc.), and each of their immediate family members, heirs, executors, administrators, successors, assigns, present and former employees, officers, directors,

13

general partners, limited partners, attorneys, assigns, legal representatives, insurers, reinsurers, and agents.

1.24 "Released Claims" means any and all rights, debts, demands, claims (including "Unknown Claims" as defined in ¶ 1.31 below) or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory, common law, foreign law, or any other law, rule, or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class and/or individual in nature, whether direct or derivative in nature, including both known claims and unknown claims which arise out of, are based upon, or are in any way related, directly or indirectly, to any of the facts, matters, allegations, transactions, events, disclosures, statements, acts or occurrences, representations or omissions involved, set forth, or referred to in any pleading in this action that (a) Lead Plaintiff or any member of the Class asserted, or could have asserted in this Litigation against any of the Released Persons; or (b) could have been asserted in the Complaint, in this Litigation, or in any other action or forum by Lead Plaintiff and/or the Class Members or any of them against any of the Released Persons; *provided however*, that the Released Claims do not include (i) any claims to

14

enforce the terms of this Stipulation, and (ii) any claims by Piedmont and the Advisor Defendants or any of their present or former directors, officers, or employees related to indemnification, insurance, or claims between or among the Defendants.

1.25 "Released Persons" means any and all of the Defendants and each and all of their Related Parties.

1.26 "Settled Defendants' Claims" means all claims, demands, losses, rights, and causes of action of any nature whatsoever (including, but not limited to, any claims for attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), that have been or could have been asserted in the Litigation or any forum by the Defendants against the Lead Plaintiff, Class Members, or Plaintiff's Counsel, which arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution of the Litigation (except for claims to enforce the Settlement); provided, however, that "Settled Defendants' Claims" shall not include any claims to enforce the terms of this Stipulation or which relate to indemnification, insurance, or claims between or among the Defendants.

1.27 "Settlement" means the settlement of the Litigation as set forth in this Stipulation.

1.28 "Settlement Amount" means Four Million Nine Hundred Thousand Dollars ($4,900,000).

1.29 "Settlement Fund" means the Settlement Amount, to be provided in cash, plus any interest that may accrue thereon as provided for herein. "Net Settlement Fund" means the Settlement Fund less any amounts: for court-awarded attorneys' fees, costs and expenses; taxes; Costs of Notice and Administration; and court-awarded costs and expenses to Lead Plaintiff.

1.30 "Settling Parties" means, collectively, each of the Defendants and the Lead Plaintiff on behalf of itself and each of the Class Members.

1.31 "Unknown Claims" means any of the Released Claims which Lead Plaintiff or any Class Member does not know or suspect to exist in such party's favor at the time of the release of the Released Persons which, if known by such party, might have affected such party's decisions concerning the Settlement. With respect to any and all Released Claims, upon the Effective Date, the Lead Plaintiff and the Class Members shall expressly waive, and by operation of the Order and Final Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

*A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.*

The Class Members, by operation of the Order and Final Judgment, shall have expressly waived any and all provisions, rights, and benefits conferred by any law of

16

any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. The Class Members may hereafter discover facts in addition to or different from those which such party now knows or believes to be true with respect to the subject matter of the Released Claims, but the Class Members, upon the Effective Date, by operation of the Order and Final Judgment, shall have fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

**2.     The Settlement**

      **a.          The Settlement Fund**

2.1     In full and final settlement of all Released Claims against the Released Persons, Defendants shall pay or cause to be paid to the Class, the Settlement Amount as follows:

17

(a)     Within ten (10) business days of Defendants' Counsel's receipt of all of the following: (i) a signed order from the Court preliminarily approving the Settlement, (ii) the Settlement Fund wiring instructions, and (iii) the tax identification number for the Settlement Fund, Piedmont, on behalf of all Defendants, shall deposit or cause to be deposited seventy-five thousand dollars ($75,000), or, if the Court does not preliminarily approve the settlement of the *Piedmont* Litigation, one hundred fifty thousand dollars ($150,000), of the Settlement Amount by wire into the Escrow Account for the establishment of a Notice and Administration Fund as set forth in ¶ 2.9 herein.

(b)     Within ten (10) business days of the Court entering the Order and Final Judgment, Piedmont, on behalf of all Defendants, shall deposit or cause to be deposited four million eight hundred twenty-five thousand dollars ($4,825,000), or, if the Court does not preliminarily approve the settlement of the *Piedmont* Litigation four million seven hundred fifty thousand dollars ($4,750,000), by wire into the Escrow Account.

**b.       Additional Disclosures**

2.2     After the filing of the initial complaint in the Action, on March 29, 2007 Defendants filed with the Securities and Exchange Commission a supplement to the

18

Proxy which included additional information about, among other things: the agreements with the Advisor Defendants that would be in place subsequent to the Internalization; and the strategic alternatives Piedmont could pursue after the Internalization other than a listing of Piedmont's stock on a national securities' exchange. The Action was a substantial factor in the making of such additional disclosures.

          **c.**       **Bill of Costs**

2.3    Within ten (10) business days of the Effective Date, Defendants will withdraw their bill of costs, in the amount of $157,972.23, which was filed with the Court on October 10, 2012.

          **d.**       **The Escrow Agent**

2.4    The Escrow Agent shall invest any funds in excess of seventy-five thousand dollars ($75,000) (or, if the Court does not preliminarily approve the settlement of the *Piedmont* Litigation, in excess of one hundred fifty thousand dollars ($150,000)), deposited into the Settlement Fund pursuant to ¶ 2.1 above in instruments backed by the full faith and credit of the government of the United States of America, including but not limited to those issued by the Certificate of Deposit Account Registry Service ("CDARS") or the Governmental National Mortgage Association ("GNMAs" or "Ginnie Maes"), and shall collect and reinvest all interest accrued

19

thereon in the same instruments. Any funds held in escrow in an amount less than $75,000 (or, if the Court does not preliminarily approve the settlement of the *Piedmont* Litigation, in an amount less than one hundred fifty thousand dollars ($150,000)), may be held in an interest bearing bank account insured by the FDIC.

2.5    The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the prior written agreement among Plaintiff's Co-Lead Counsel and Defendants' Counsel.

2.6    Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.

2.7    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

2.8    All costs and expenses associated with the Settlement, including but not limited to any taxes, administrative costs, and costs of providing notice of the proposed Settlement to the members of the Class, shall be paid from the Settlement Amount, and in no event shall any of the Released Persons, Lead Plaintiff, members of the Class, or their counsel bear any responsibility for any such costs or expenses.

2.9    After payment of the Settlement Amount into the Escrow Account pursuant to ¶ 2.1 hereof, the Escrow Agent may establish a "Notice and Administration Fund" and may deposit up to $75,000 (or, if the Court does not preliminarily approve the settlement of the *Piedmont* Litigation, up to $150,000), from the Settlement Fund in it. The Notice and Administration Fund may be used by the Escrow Agent without further consent of Defendants or order of the Court to pay costs and expenses reasonably and actually incurred in connection with providing notice to the Class, locating Class Members, soliciting claims, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release Forms, and paying Taxes (as defined in ¶ 2.11(c) hereof), escrow fees and costs, if any. The Notice and Administration Fund may also be invested and earn interest as provided for in ¶ 2.4 of this Stipulation.

2.10    The Escrow Agent shall pay from the Notice and Administration Fund (and from the Settlement Fund to the extent that costs and expenses exceed the balance contained in the Notice and Administration Fund), without further approval from Defendants or the Court, the reasonable costs and expenses associated with identifying members of the Class and effecting mail notice and publication notice to the Class, and the administration of the Settlement, including, without limitation, the actual costs of publication, printing and mailing the Notice, reimbursements to

nominee owners for forwarding notice to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims, provided that the foregoing costs and expenses shall not exceed $150,000. To the extent that prior to the Effective Date, the foregoing costs and expenses do exceed $150,000, Plaintiff's Co-Lead Counsel shall apply to the Court for an order allowing for reimbursement of the foregoing costs and expenses in excess of $150,000.

   **e.**    **Taxes**

  2.11  (a)   The Settling Parties and their counsel agree that the Settlement Fund is intended to be a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.11, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under § 1.468B of the Internal Revenue Code of 1986, as amended (the "Code"). It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of § 1.468B of the Code and the Treasury regulations promulgated thereunder, the Claims Administrator shall be designated as the "administrator" of the Settlement Fund. The Claims Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in ¶ 2.11(a) hereof) shall be consistent with this ¶ 2.11 and in all events shall reflect that all Taxes as defined in ¶ 2.11(c) hereof (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.11(c) hereof.

(c)     All: (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 2.11 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this

¶ 2.11) ("Tax Expenses"), shall be paid out of the Settlement Fund. Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid at the direction of the Claims Administrator out of the Settlement Fund without prior order from the Court, and the Claims Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amount, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). The Settling Parties hereto agree to cooperate with the Claims Administrator, the Escrow Agent, and each other, and the Claims Administrator's tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.11.

(d)     For the purpose of this ¶ 2.11, references to the Settlement Fund shall include both the Settlement Fund and the Notice and Administration Fund and shall also include any earnings thereon.

### f.     Termination of Settlement

2.12  In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Order and Final Judgment is reversed or vacated or materially altered

following any appeal taken therefrom, or is successfully collaterally attacked, within ten (10) business days after written notification of such event is sent by Defendants' counsel, the Escrow Agent shall refund the Settlement Amount funded by Piedmont and its insurer pursuant to ¶ 2.1 (including accrued interest), *less* reasonable expenses actually incurred or due and owing from the Settlement Fund for the Costs of Notice and Administration of the Settlement, including any amounts expended with respect to Escrow Agent fees, taxes, tax advice and preparation fees, pursuant to ¶ 2.10 above, to Piedmont and its insurer by wire transfer in accordance with the instructions to be provided by Defendants' Counsel.

## 3.    Preliminary Approval Order and Settlement Hearing

3.1    Plaintiff's Co-Lead Counsel filed a motion with the United States Court of Appeals for the Eleventh Circuit to abate the current appeal and seek limited remand of the Litigation to the Court for proceedings associated with approval of the Settlement, which motion was granted on December 7, 2012. Within ten (10) business days after the Settlement becomes Effective and the Court executes an order awarding fees and expenses, Plaintiff's Co-Lead Counsel shall cause a motion to dismiss the appeal with prejudice to be filed with the United States Court of Appeals for the Eleventh Circuit.

3.2    Promptly after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with its Exhibits to the Court and Plaintiff's Co-Lead Counsel shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form and content of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, approval for the mailing of the Settlement Notice and publication of a summary notice, substantially in the form of Exhibits A-1 and A-2, attached hereto. The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application as defined in ¶ 6.1 below, and the date of the Settlement Hearing as defined in ¶ 3.3 below.

3.3    The Settling Parties will request that, after notice is given and not earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, if applicable, the Court hold a hearing (the "Settlement Hearing") and finally approve the Settlement of the Litigation as set forth herein. At the Settlement Hearing, Plaintiff's Co-Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

3.4    Except for the obligation to pay or cause payment of the Settlement Fund into the escrow account as set forth in ¶ 2.1 herein and to cooperate in the production of information with respect to the identification of Class Members from Piedmont's shareholder transfer records, as provided herein, Defendants and their Related Parties shall have no liability, obligation or responsibility for the administration of the Settlement, including the payment of Taxes and Tax Expenses under ¶ 2.11 above, or disbursement of the Net Settlement Fund, as described in ¶ 5.2 below.

## 4.    Releases and Covenant Not to Sue

4.1    Upon the Effective Date, as defined in ¶ 1.9 hereof, Lead Plaintiff, each and all of the Class Members, and Plaintiff's Counsel shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against all of the Released Persons, and shall forever be enjoined from prosecuting the Released Claims, regardless of whether such Class Member executes and delivers a Proof of Claim and Release.

4.2    Upon the Effective Date, as defined in ¶ 1.9 hereof, each of the Defendants shall be deemed to have, and by operation of the Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiff, each and all of the Class Members, and Plaintiff's Counsel from all

27

Settled Defendants' Claims, and shall forever be enjoined from prosecuting such claims.

### 5.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of Settlement Fund

5.1    The Claims Administrator, subject to such supervision and direction of the Court and/or Plaintiff's Co-Lead Counsel as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (described below) to Authorized Claimants.

5.2    The Settlement Fund shall be applied as follows:

(a)    to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Class Members, soliciting Class claims, assisting with the filing of claims, processing Proof of Claim and Release Forms, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any;

(b)    to pay the Taxes and Tax Expenses described in ¶ 2.11 above;

(c)    to pay Plaintiff's Counsel's attorneys' fees, expenses, and costs with interest thereon (the "Fee and Expense Award") and Lead Plaintiff's costs and expenses, if and to the extent allowed by the Court;

(d)     to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)     Each Authorized Claimant shall be required to submit a Proof of Claim and Release Form, substantially in a form approved by the Court, which form will indicate the number of shares owned by the Authorized Claimant as of February 20, 2007 based on Piedmont's records. If the Authorized Claimant disputes the information contained therein, the Authorized Claimant may provide documents as are designated therein, including proof of the transactions claimed, or such other documents or proof as the Claim Administrator, in its discretion, may deem acceptable to demonstrate the number of shares owned by the Authorized Claimant as of February 20, 2007;

(b)     All Proof of Claim and Release Forms must be submitted by the date specified in the Notice unless such period is extended by order of the Court. Any Class Member who fails to submit a Proof of Claim and Release Form by such date

shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by order of the Court, a later-submitted Proof of Claim and Release Form by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment to be entered in the Litigation and the releases provided for herein, and will be barred from bringing any action against the Released Persons concerning the Released Claims. A Proof of Claim and Release Form shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim and Release Form shall be deemed to have been submitted when actually received by the Claims Administrator. Notwithstanding the foregoing, Plaintiff's Co-Lead Counsel may, in their discretion, accept for processing late submitted claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed;

(c)     Each Proof of Claim and Release Form shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below;

30

(d)     Proof of Claim and Release Forms that do not meet the submission requirements may be rejected.  Prior to rejection of a Proof of Claim and Release Form, the Claims Administrator shall communicate with the claimant in order to remedy the curable deficiencies in the Proof of Claim and Release Form submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all claimants whose Proof of Claim and Release Forms it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below;

(e)     If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection, along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Plaintiff's Co-Lead Counsel shall thereafter present the request for review to the Court; and

31

(f)     The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation described in the Notice and approved by the Court.

5.4     Defendants shall cooperate with Co-Lead Counsel and the Claims Administrator in responding to all reasonable requests for information with respect to Class Members' identification, contact information and share ownership ("data"), in the possession, custody, or control of Defendants, and needed to disseminate the Notice, prepare the pre-populated Proof of Claim form, or to prepare the Plan of Allocation. Defendants agree to make reasonably available to Co-Lead Counsel and the Claims Administrator the person(s) most knowledgeable from Piedmont or Piedmont's counsel with respect to the Class Member data. Defendants agree that such person(s) will timely and reasonably respond to requests for information and data, and will work cooperatively with Co-Lead Counsel and the Claims Administrator from time to time as requested through final distribution of the Net Settlement Fund to Class Members.

5.5     Because of the substantial overlap between the members of the Class in this Settlement and the members of the proposed class or classes in the *Piedmont* Litigation, and because of the substantial efficiencies and monetary savings that will inure to the material benefit of the members of such classes, the administration and

32

distribution of the Net Settlement Fund will be done on a coordinated basis with the administration and distribution of the net settlement fund in the *Piedmont* Litigation. In the event that the proposed settlement in the *Piedmont* Litigation does not become effective at or around the same time as this Settlement's Effective Date, Co-Lead Counsel, at their sole discretion, have the right to reasonably delay the distribution of the Net Settlement Fund.

5.6    Except for Defendants' obligation to pay or cause payment of the Settlement Fund into the Escrow Account as set forth in ¶ 2.1 herein and to cooperate in the production of information with respect to the identification of Class Members from Piedmont's shareholder transfer records, as provided herein, Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the administration, investment, or distribution of the Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

5.7    No Person shall have any claim against Lead Plaintiff, the Escrow Agent, Plaintiff's Counsel or any claims administrator based on distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.8    If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining shall be re-distributed among Authorized Claimants in an equitable and economic manner, if feasible, until all Authorized Claimants have recovered 100% of their losses, as determined under the Plan of Allocation, and any remainder donated to a non-profit organization to be proposed by Plaintiff's Co-Lead Counsel and approved by the Court.

5.9    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a necessary term of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation or affect the Finality of the Court's Order and Final Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.

### 6.  Plaintiff's Counsel's Attorneys' Fees and Expenses

6.1  Plaintiff's Co-Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions to it from the Settlement Fund for: (a) an award of attorneys' fees from the Settlement Fund; (b) payment of expenses and costs incurred in connection with prosecuting the Litigation; and (c) any interest on such attorneys' fees, costs, and expenses at the same rate and for the same periods as earned by the Settlement Fund. Plaintiff's Co-Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

6.2  The attorneys' fees, expenses, and costs, including the fees of experts and consultants, as awarded by the Court, shall be paid from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses and enters the Order and Final Judgment, to each of Plaintiff's Co-Lead Counsel who affirmatively elect to receive such payment prior to the Effective Date, in accordance with Plaintiff's Co-Lead Counsel's allocation, subject to the conditions below, of the attorneys' fees among Plaintiff's Counsel in a manner in which it in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Litigation. In the event that the Effective Date does not occur, or the Order and Final Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and in

35

the event that the Fee and Expense Award has been paid to any extent, then only Plaintiff's Counsel who elected to receive the payments under this paragraph, including their law firms, partners, and/or shareholders, within five (5) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, shall each be jointly and severally liable to refund to the Settlement Fund all of the fees, expenses, and costs previously paid to Plaintiff's Counsel from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal or modification. Each such Plaintiff's Counsel's law firm, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders (a) are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph and (b) are jointly and severally liable for the full amount of all fees, expenses, and costs paid from the Settlement Fund. Without limitation, such Plaintiff's Counsel and their partners, shareholders and/or members agree that the Court may, upon application of Defendants and notice to Plaintiff's Counsel, summarily issue orders, including but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, should such law firm or its partners, shareholders or members fail to timely repay fees and expenses pursuant to this paragraph.

6.3    Any appeal from any order relating to the Fee and Expense Application or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the Finality of the Order and Final Judgment approving the Stipulation and the Settlement of the Litigation set forth herein.

6.4    Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiff's Counsel from the Settlement Fund.

6.5    Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiff's Counsel of payments from the Settlement Fund, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

## 7.    Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

7.1    The Effective Date of the Stipulation shall be conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order, as required by ¶ 3.2 hereof;

37

(b)    the Court has approved this Stipulation, following notice to the

Class Members and the Settlement Hearing, as prescribed by Rule 23 of the Federal

Rules of Civil Procedure;

(c)    the Court has entered the Order and Final Judgment, or a judgment

substantially in the form of Exhibit B attached hereto;

(d)    the Order and Final Judgment has become Final, as defined in ¶

1.12 hereof; and

(e)    the Settlement shall not have been terminated by any of the parties

hereto.

7.2    Upon the occurrence of all of the events referenced in ¶ 7.1 hereof, any

and all remaining interest or right of Defendants and their insurers in or to the

Settlement Fund, if any, shall be absolutely and forever extinguished.

7.3    Each of the Settling Parties shall have the right to terminate the

Settlement and this Stipulation by providing written notice of their election to do so

("Termination Notice") to all other parties hereto within thirty (30) days of: (a) the

Court's declining to enter the Preliminary Approval Order in any material respect; (b)

the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's

declining to enter the Order and Final Judgment in any material respect; or, (d) the

date upon which the Order and Final Judgment is modified or reversed in any material respect by the Court, Court of Appeals or the Supreme Court.

7.4     The Settlement Hearing shall be held at a date and time convenient to the Court, at the United States District Court for the Northern District of Georgia, Atlanta Division, 75 Spring Street, SW, Atlanta, Georgia 30303-3361, to determine whether the proposed Settlement of the Litigation on the terms and conditions provided for in this Stipulation is fair, reasonable, and adequate as to the Class and should be approved by the Court; whether an Order and Final Judgment as provided in ¶ 1.18 should be entered herein; whether the proposed Plan of Allocation should be approved; and to determine the amount of fees and expenses that should be awarded to Plaintiff's Counsel.

7.5     In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, including, without limitation, in the event the Order and Final Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, within ten (10) business days after written notification of such event is sent by Defendants' counsel, the Escrow Agent shall refund the Settlement Amount funded by Piedmont and its insurer pursuant to ¶ 2.1 (including accrued interest), less reasonable expenses actually incurred or due and owing from the Settlement Fund for the Costs of Notice

39

and Administration of the Settlement, including any amounts expended with respect to Escrow Agent fees, taxes, tax advice and preparation fees, pursuant to ¶ 2.10 above, to Piedmont and its insurer by wire transfer in accordance with the instructions to be provided by Defendants' Counsel. In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective and Defendants are entitled to the return of any portion of the Settlement Amount as provided for under this paragraph, at the request of Defendants' Counsel, the Claims Administrator or its designee shall apply for any tax refund owed to the Settlement Fund, and the Escrow Agent shall pay the proceeds, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, to Piedmont and its insurer in accordance with the instructions to be provided by Defendants' Counsel.

7.6    In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, the Settling Parties shall be restored to their respective positions in the Litigation immediately prior to the execution of this Stipulation. In such event, the terms and provisions of the Stipulation, with the exception of ¶ 2.12; ¶¶7.5-7.6; ¶ 8.1 (including all subparts); & ¶ 9.16 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the

40

Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to Lead Plaintiff or Plaintiff's Counsel shall constitute grounds for cancellation or termination of the Stipulation.

## 8.    No Admission of Wrongdoing

8.1    This Stipulation, whether or not consummated, and any negotiations, discussions, or proceedings in connection herewith shall not be:

(a)    offered or received against any Defendant as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any Defendant of the truth of any allegations by the Plaintiff or the validity of any claim that has been or could have been asserted in the Litigation, or the deficiency of any defense that has been or could have been asserted in the Litigation, or of any liability, negligence, fault, or wrongdoing of the Defendants;

(b)    offered or received against any Defendant as evidence of a presumption, concession, admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any Defendant, or against Lead Plaintiff or any Class Member as evidence of any infirmity in the claims of Lead Plaintiff and the Class;

(c)     offered or received against any Defendant as evidence of a presumption, concession, or admission of any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Stipulation, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation or resolve indemnification, insurance, or claims between or among the Defendants; provided, however, that if this Stipulation is approved by the Court, Defendants and their Related Parties may refer to it to effectuate the release granted them hereunder; or

(d)     construed against Defendants, Lead Plaintiff, or the Class as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

## 9.     Miscellaneous Provisions

9.1     The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     This Stipulation and the Exhibits attached hereto constitute the entire agreement between the Settling Parties as to the subject matter hereof and supersede

any prior or contemporaneous written or oral agreements or understandings between the Settling Parties. No representations, warranties, or inducements have been made to any party concerning the Stipulation, or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

9.3    No modification or amendment of this Stipulation shall be valid unless made in writing and signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.4    Except as otherwise provided for herein, each party shall bear his, her or its own costs.

9.5    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises all claims that were contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Order and Final Judgment will contain a statement that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to

43

rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.6    Defendants and/or their Related Parties may file the Stipulation and/or the Order and Final Judgment in any action that may be brought against them in order to support a defense, claim, or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.7    Except as otherwise provided for herein, all agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.8    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.9    Plaintiff's Co-Lead Counsel, on behalf of the Class, are expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which it deems appropriate.

44

9.10  Each counsel or other person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do so.

9.11  The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

9.12  The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

9.13  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

9.14  The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

9.15  The Stipulation and the Exhibits attached hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Georgia, and the rights and obligations of the parties to the Stipulation shall

be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Georgia without giving effect to that State's choice-of-law principles.

9.16    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.17    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated December 31, 2012.

**CHITWOOD  HARLEY  HARNES  KING & SPALDING LLP
LLP**

Robert W. Killorn
Krissi T. Gore
2300 Promenade II
1230 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476

Michael R. Smith
Bethany M. Rezek
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100

*Counsel for Defendants Piedmont Office
Realty Trust, Inc. (f/k/a Wells Real Estate
Investment Trust, Inc.), Wells Real*

be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Georgia without giving effect to that State's choice-of-law principles.

9.16   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.17   This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated December 31, 2012.

**CHITWOOD HARLEY HARNES LLP**

**KING & SPALDING LLP**

Robert W. Killorin
Krissi T. Gore
2300 Promenade II
1230 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476

Michael R. Smith
Bethany M. Rezek
1180 Peachtree Street, NE
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100

***Counsel for Defendants Piedmont Office Realty Trust, Inc. (f/k/a Wells Real Estate Investment Trust, Inc.), Wells Real***

**CHIMICLES & TIKELLIS LLP**

*Kimberly M. Donaldson*

Nicholas E. Chimicles
Kimberly M. Donaldson
One Haverford Centre
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

*Estate Funds, Inc., Wells Capital, Inc.,*
*Wells Management Company, Inc., Wells*
*Advisory Services I, LLC, Piedmont*
*Office Management, LLC (f/k/a Wells*
*Real Estate Advisory Services, Inc.),*
*Piedmont Government Services, LLC*
*(f/k/a Wells Government Services, Inc.)*
*Leo F. Wells, III, Douglas P. Williams,*
*and Donald A. Miller*

**LABATON SUCHAROW LLP**

*Joseph Sternberg*

Lawrence A. Sucharow
Joseph Sternberg
Michael L. Woolley
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Plaintiff's Co-Lead Counsel*

**ROGERS & HARDIN LLP**

Tony G. Powers
Kimberly L. Myers
Joshua P. Gunnemann
229 Peachtree Street NE
2700 International Tower
Atlanta, GA 30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224

*Counsel for Defendants Michael R.*
*Buchanan, Richard W. Carpenter, Bud*
*Carter, William H. Keogler, Jr., Donald S.*
*Moss, Neil H. Strickland, and W. Wayne*
*Woody*

47

**CHIMICLES & TIKELLIS LLP**

*Estate Funds, Inc., Wells Capital, Inc., Wells Management Company, Inc., Wells Advisory Services I, LLC, Piedmont Office Management, LLC (f/k/a Wells Real Estate Advisory Services, Inc.), Piedmont Government Services, LLC (f/k/a Wells Government Services, Inc.) Leo F. Wells, III, Douglas P. Williams, and Donald A. Miller*

Nicholas E. Chimicles
Kimberly M. Donaldson
One Haverford Centre
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633


**LABATON SUCHAROW LLP**

**ROGERS & HARDIN LLP**

Lawrence A. Sucharow
Joseph Sternberg
Michael L. Woolley
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Tony G. Powers
Kimberly L. Myers
Joshua P. Gunnemann
229 Peachtree Street NE
2700 International Tower
Atlanta, GA 30303
Telephone: (404) 522-4700
Facsimile: (404) 525-2224

*Plaintiff's Co-Lead Counsel*

*Counsel for Defendants Michael R. Buchanan, Richard W. Carpenter, Bud Carter, William H. Keogler, Jr., Donald S. Moss, Neil H. Strickland, and W. Wayne Woody*

47